No. 24-30420

# In the United States Court of Appeals for the Fifth Circuit

VOICE OF THE EXPERIENCED, A MEMBERSHIP ORGANIZATION ON BEHALF OF ITSELF AND ITS MEMBERS; MYRON SMITH, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; DAMARIS JACKSON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; NATE WALKER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; DARRIUS WILLIAMS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; KEVIAS HICKS; JOSEPH GUILLORY; KENDRICK STEVENSON; ALVIN WILLIAMS,

*Plaintiffs-Appellees*

v.

JAMES M. LEBLANC, SECRETARY, DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS; TIM HOOPER, WARDEN, LOUISIANA STATE PENITENTIARY; MISTY STAGG, IN HER OFFICIAL CAPACITY AS DIRECTOR OF PRISON ENTERPRISES, INCORPORATED; LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS; PRISON ENTERPRISES, INCORPORATED,

*Defendants-Appellants*

---

On Appeal from the United States District Court
for the Middle District of Louisiana
No. 23-cv-1304, Hon. Brian A. Jackson

---

**REPLY IN SUPPORT OF
EMERGENCY MOTION FOR ADMINISTRATIVE STAY AND FOR
STAY OF THE DISTRICT COURT'S JULY 2 ORDER PENDING APPEAL**

---

*(Counsel listed on inside cover)*

ELIZABETH B. MURRILL
Attorney General of Louisiana

J. BENJAMIN AGUIÑAGA
Solicitor General

OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 506-3746
AguinagaB@ag.louisiana.gov

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ..................................................................................................1

ARGUMENT ..........................................................................................................1

    I.   THERE IS NO PROCEDURAL BAR TO THIS APPEAL. ............................. 1

    II.  THE STATE IS LIKELY TO SUCCEED ON THE MERITS. .......................... 5

    III. THE REMAINING FACTORS FAVOR A STAY. ...................................... 12

CONCLUSION .....................................................................................................13

CERTIFICATE OF SERVICE ..............................................................................14

CERTIFICATE OF COMPLIANCE .....................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Ardoin v. Robinson*,
　142 S. Ct. 2892 (U.S.) ............................................................................... 5

*Ball v. LeBlanc*,
　792 F.3d 584 (5th Cir. 2015) ............................................................... 8, 11

*Brown v. Plata*,
　563 U.S. 493 (2011) ............................................................................. 8, 8

*Farmer v. Brennan*,
　511 U.S. 825 (1994) ........................................................................... 9, 10

*Marlowe v. LeBlanc*,
　810 F. App'x 302 (5th Cir. 2020) .................................................... 1, 2, 12

*Performance Energy Servs., L.L.C.*,
　734 F.3d 389 (5th Cir. 2013) ................................................................... 7

*Planned Parenthood of Greater Texas
Surgical Health Services v. Abbott*,
　734 F.3d 406 (5th Cir. 2013) ................................................................... 3

*Powell v. Old S. Life Ins. Co.*,
　780 F.2d 1265 (5th Cir. 1986) ................................................................. 7

*Robinson v. Ardoin*,
　605 F. Supp. 3d 759 (M.D. La. 2022) ..................................................... 5

*Robinson v. Ardoin*,
　No. 22-cv-211 (M.D. La. June 17, 2022) ................................................ 5

*Rollins v. Home Depot USA*,
　8 F.4th 393 (5th Cir. 2021) ...................................................................... 6

*Sampson v. King*,
　693 F.2d 566 (5th Cir. 1982) ..................................................................................11

**Rules**

Fed. R. App. P. 27 ......................................................................................................15

Fed. R. App. P. 32 ......................................................................................................15

# INTRODUCTION

The Order is indefensible, so Plaintiffs try to shield it from the Court. For example, they claim that the injunction is insufficiently concrete. But the Order is materially identical to the order this Court stayed pending appeal in *Marlowe v. LeBlanc*, 810 F. App'x 302 (5th Cir. 2020) (per curiam). On the merits, Plaintiffs run away from the real "elephant in the room" (Opp.6): No named Plaintiff is actually subject to the challenged conditions because no named Plaintiff works on "Lines 15a, 15b, 24, and 25" (Ex. A at 72). They protest that the State did not argue this issue below. That mischaracterizes the proceedings, but in all events, the State cannot forfeit an *undisputed fact* that is dispositive of the PLRA, Eighth Amendment, and equities analyses before this Court. The Court should stay the Order pending appeal.

# ARGUMENT

## I. THERE IS NO PROCEDURAL BAR TO THIS APPEAL.

Plaintiffs' attempts to shield the Order from appellate review (Opp.6–10) are unavailing.

*First,* they claim that "the Order does not yet provide this Court with anything to review." *Id.* at 6. Nonsense.

1

One, if Plaintiffs truly believed this, they would have challenged this Court's jurisdiction. They did not, despite this Court's invitation, *see* ECF No. 18. For good reason: The Order is functionally identical to the order (from the same court) that this Court stayed pending appeal in *Marlowe*. *See* ECF No. 22 at 2–3. There, the district court ordered the State to "comply" with the Governor's recommendations and the State's COVID-19 policies. 810 F. App'x at 303. "It further ordered Defendants to 'submit to the court a plan'" within five days. *Id.* at 303–04.

This Order goes further. In addition to requiring the State to submit a report today, the Order requires the State to "take immediate measures"—including by "[c]orrect[ing]," "revis[ing]," "expand[ing]," "[c]reat[ing]," and "[d]evelop[ing]" current and new policies and procedures. Ex. A at 75, 77. Because the Order is even more concrete than the *Marlowe* order, it is baseless for Plaintiffs to claim no concrete injunction exists.

Two, it is misleading to suggest (Opp.6) the Order does not require "specific" policy changes. That is false because the Order identifies specific alleged "deficiencies" that the State must resolve, Ex. A at 77; *see id.* at 75 (listing alleged deficiencies), as well as a specific

thermoregulation "procedure" and a specific "additional heat-related policy" the State must develop, *id.* at 77. Plaintiffs also claim that the Order does not "affect operations beyond the Farm Line." Opp.6. Yet Plaintiffs do not—and cannot—dispute that the policies the Order requires the State to change (Directive No. 13.067, *i.e.*, HCP 8, and the Heat Pathology Medications list) are *DPSC-wide* policies. Mot.7–8.

*Second*, Plaintiffs assert that the State was required to first seek a stay pending appeal from the district court. Opp.6–10. Not so. The State explained that this was impracticable because of the time constraints presented by (a) the immediacy of the demanded corrective actions, (b) today's deadline, and (c) the district court's issuance of the Order 24 hours before a four-day period in which State employees would not work absent overtime availability and compensation. Mot.22–23. Plaintiffs attempt to distinguish (Opp.9) the State's cited cases on the ground that they involved "circumstances where some external event, outside of the control of the courts, was set to imminently change the status quo." The abortion law in *Planned Parenthood of Greater Texas Surgical Health Services v. Abbott*, 734 F.3d 406 (5th Cir. 2013), was *enjoined* when it came to this Court. *Id.* at 409. Whether and when that law would take

3

effect was thus within "the control of the courts." Opp.9. The Order's immediate demands upon the State are no different.

Plaintiffs' Opposition, moreover, reveals a deeper flaw in their argument. They urge the Court to ask whether it would have been "pointless" (Opp.8) for the State to request that the district court stay its Order pending appeal. That is an own goal: Such a request would have been tantamount to requesting that the district court vacate the Order—which is not a prerequisite to seeking a stay in this Court.

The Order depends on the theory that "heat index values [above] eighty-eight degrees Fahrenheit" present special concerns. Ex. A at 75. But those values do not exist year round. The record suggests that those values appear only from May through October. *Id.* at 27; Opp., Ex. 1 at 6, 10. There is thus is no immediate justification for the Order *unless* the district court is trying to alter LSP through the current summer and upcoming fall (after which no heat risk will exist until mid-2025). And there's the rub: If the State asked the district court to stay the Order pending appeal—*i.e.*, a stay that would necessarily extend through this

4

fall—the State would be asking the court to effectively vacate the Order it had just entered. That would have been pointless.[1]

## II. THE STATE IS LIKELY TO SUCCEED ON THE MERITS.

On the merits, Plaintiffs have no serious answer to the clear PLRA and Eighth Amendment problems in the Order.

***PLRA.*** **1.** Plaintiffs never acknowledge (as the district court did) that their preliminary-injunction motion targets "only Lines 15a, 15b, 24, and 25" of the Farm Line. Ex. A at 72. Plaintiffs also never dispute that no named Plaintiff works on those lines. Their best response is "at least one named plaintiff, Myron Smith, is still assigned to the Farm Line," and "any day, he may be sent out to work the fields." Opp.12. But Plaintiffs never acknowledge Smith's declaration that he is "no longer [] required to work in the field." Opp., Ex. 10 at 1; Ex. A at 5. That dooms the Order. Mot.11. Plaintiffs try two escape routes—neither works.

---

[1] Plaintiffs' invocation (Opp.10) of *Robinson v. Ardoin*, 605 F. Supp. 3d 759 (M.D. La. 2022), is puzzling. Contrary to Plaintiffs' representation, the State did not "receive[] [a] stay in the district court." Opp.10. In addition, the State had one month to forestall the district court's adoption of a congressional map. Order, *Robinson v. Ardoin*, No. 22-cv-211 (M.D. La. June 17, 2022), ECF No. 206. That timeline allowed the State to exhaust stay requests at every level, culminating in a Supreme Court stay a day before the remedial hearing. *See* ECF No. 227; *Ardoin v. Robinson*, 142 S. Ct. 2892 (U.S.). No such runway exists here.

5

*First*, Plaintiffs complain that the State did not brief this argument below. Opp.11. That mischaracterizes the emergency-pace proceedings, and it is irrelevant. Plaintiffs' problem did not exist when they filed their preliminary-injunction motion in mid-May because Plaintiffs Williams and Smith were working Lines 15b and 25. Ex. A at 4, 8. Indeed, as far as the State's counsel knew, that remained true when they filed their opposition ten days later. Ex. B at 12 ("Only two of the named plaintiffs are currently working in the fields."). But the record later changed. With their preliminary-injunction reply, Plaintiffs submitted supplemental declarations stating that Williams is no longer assigned to the Farm Line and Smith is no longer required to work in the field. Opp., Ex. 10 at 1 (Smith); Opp., Ex. 11 at 1 (Williams). Then, at the hearing, Plaintiffs represented that Williams and Smith no longer work on the Farm Line. Ex. C at 40–41, 43. This issue was thus late-breaking.

More important, the State cannot forfeit an *undisputed fact* that is dispositive of the PLRA, Eighth Amendment, and balance-of-equities analyses. So, even if the Court ran one of its many forfeiture inquiries, there would be no forfeiture issue. *Compare Rollins v. Home Depot USA*, 8 F.4th 393, 398 (5th Cir. 2021) ("'purely legal matter and failure to

consider the issue will result in a miscarriage of justice'"), *with Powell v. Old S. Life Ins. Co.*, 780 F.2d 1265 (5th Cir. 1986) ("'pure question of law *or* a refusal to [consider issue] would 'result in a miscarriage of justice'" (emphasis added)), *and with Performance Energy Servs., L.L.C.*, 734 F.3d 389 (5th Cir. 2013) ("'this court may correct 'a plain forfeited error affecting substantial rights if the error seriously affects the fairness, integrity or public reputation of judicial proceedings'"). The undisputed fact that no named Plaintiff works on the Farm Line makes this a purely legal issue—and it is difficult to see how the Court could affirm the Order on the PLRA and Eighth Amendment knowing no named Plaintiff is subject to the challenged conditions.

*Second*, Plaintiffs say Plaintiff Voice of the Experienced (VOTE) could fill this gap because "VOTE members are currently working on the Farm Line." Opp.12. The Order never cites or relies on VOTE's declaration (Opp., Ex. 6 (Dist. Ct. ECF No. 37-10)); in fact, the "The Plaintiffs" section focuses only on the individual Plaintiffs, Ex. A at 3–24. The Order thus cannot stand on its own terms. More, VOTE's declaration does not claim its members are assigned to the challenged lines (Lines 15a, 15b, 24, and 25) or identify a single member subject to the challenged

7

conditions. *See* Opp., Ex. 6 at 4 (broadly alleging some members "are assigned and/or at constant risk of assignment to the Farm Line"). Even the VOTE declaration, therefore, could not sustain the Order.

**2.** Plaintiffs also have no answer for the other PLRA problems.

*First*, Plaintiffs admit the Order grants class-wide relief. Plaintiffs rightly do not try to defend the district court's cited cases for issuing that relief. Mot.12. They also have no answer for the *Ball v. LeBlanc*, 792 F.3d 584 (5th Cir. 2015), problem. They suggest (Opp.13) the State waived it below by stating that "courts may issue conditional class relief prior to class certification," Ex. B at 12—but *Ball* itself appears to contemplate narrow circumstances in which such relief may be appropriate. 792 F.3d at 599 ("[A]ny relief must apply only to them, if possible."). The problem here is the district court never even tried to limit relief to the named Plaintiffs. Plaintiffs also suggest (Opp.14) this case escapes *Ball* because it is "a putative class action." *But, as in* Ball*, there is no certified class.* Slapping on the "putative" label does not save Plaintiffs.[2] And Plaintiffs'

---

[2] This disposes of Plaintiffs' invocation (Opp.15) of the statement in *Brown v. Plata*, 563 U.S. 493, 531 (2011), that "[e]ven prisoners with no present physical or mental illness" stood to collaterally benefit from injunctive relief. That case involved certified classes of currently *ill* prisoners subject to the challenged conditions. The Court emphasized

8

passing note (Opp.14) about VOTE's presence is irrelevant for the reasons explained above.

*Second*, Plaintiffs effectively admit that the Order requires the State to change *DPSC-wide* policies—but they speculate that perhaps the district court will agree to narrow that to the Farm Line. Opp.17–18; *cf.* Mot.13–14. That admits the Order is unlawfully overbroad. They also dispute whether the Order unlawfully requires the State to comply with its own policies, citing their lack of knowledge about what exactly the State has implemented. Opp.16–17; *cf.* Mot.13. They *would* know if the named Plaintiffs actually worked on the challenged lines. And their lack of knowledge does not avoid the *Pennhurst* problem.

**Eighth Amendment. 1.** On the Eighth Amendment, Plaintiffs argue that, since all named Plaintiffs "face[] the imminent, constant risk of being forced to labor on the Farm Line," Opp.19, they have carried their Eighth Amendment burden under *Farmer v. Brennan*, 511 U.S. 825 (1994). They misread *Farmer*. The "substantial risk" factor in Eighth

---

that currently *healthy* prisoners "do not yet have [an Eighth Amendment] claim," *id.* at 532, but the PLRA did not bar relief that collaterally benefitted them. Named Plaintiffs here are like the healthy prisoners in *Brown*—except that, unlike in *Brown*, there is no class or named Plaintiff subject to the challenged conditions that could sustain the Order.

Amendment cases refers to a plaintiff who "is incarcerated *under conditions* posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Plaintiffs emphasize (Opp.18) the word *risk* but overlook the preceding phrase *under conditions*. To obtain an Eighth Amendment injunction, a plaintiff must first be subject to conditions that *themselves* pose the substantial risk of serious harm. And that is the fatal flaw here: Because no named Plaintiff works on the Farm Line (and Smith, the only named Plaintiff even assigned to the Farm Line, is not required to work in the field), no named Plaintiff is subject to the supposed "High Heat" conditions that allegedly pose a substantial risk of harm. That ends the Eighth Amendment analysis.

**2.** Space constraints permit only a brief response on several other defects. Of reliance on industry standards, Plaintiffs say (Opp.22) the district court "did not" commit this sin, but in the same breath they admit otherwise. Rightly so. The district court said it "has conducted a review of operative federal and state requirements for heat safety in agricultural settings, *and preliminarily concludes that [LSP] fails to meet the minimum standards set forth by such regulations.*" Ex. A at 46 (emphasis added); *see also id.* at 48–51 (relying on Green declaration that "farming

10

operations at [LSP] do not meet industry standards"); *id.* at 64–65 (same). That violates *Sampson v. King*, 693 F.2d 566, 569 (5th Cir. 1982).

Of prisoner grievances, Plaintiffs claim (Opp.22) the district court was entitled to view the State's denials "as evidence that LSP has been made aware" of specific alleged heat risks. But that "evidence" exists only if the denials were wrong, as the district court assumed. Mot.17–18. There is no factual basis for that assumption, and *Valentine* forecloses this reasoning. *Id.*; *see Ball*, 792 F.3d at 595 (grievances are "not even particularly strong evidence" that "a prison official is aware of facts from which he can deduce a risk of harm").

Finally, of the district court's use of LSP's heat-related protections to show the State's supposed *deliberate indifference*, Plaintiffs have no response to this violation of *Valentine* (Mot.16–17) except that the reasoning was not "dispositive" (Opp.21). But if that was not dispositive, was it industry standards that tipped the scale, or was it grievance denials? Plaintiffs' "throw it all in the pot" strategy fails because a substantial portion of the ingredients are independently invalid.

## III. THE REMAINING FACTORS FAVOR A STAY.

Plaintiffs' cursory responses on the remaining factors are meritless. On irreparable harm, Plaintiffs dispute that unrecoverable compliance costs are irreparable harm. Plaintiffs claim that this principle is limited to regulatory challenges. Opp.24. Nonsense: That the Order is a judicial decision rather than an executive order or a final rule does not change the irreparable nature of the compliance harms. Plaintiffs also complain that "no evidence of Appellants' burden has been introduced here." *Id.* Again, nonsense: The State's policies and procedures are not going "revise[]," "expand[]," and "[c]reate" themselves. Ex. A at 77.

As for state sovereignty, Plaintiffs downplay the Order as "quite limited" and "significant[ly] restrain[ed]." Opp.25. Those characterizations are belied by the Order's own terms. More fundamentally, Plaintiffs do not dispute that this Court has found irreparable sovereign harm in materially identical cases, including *Marlowe*. *See* 810 F. App'x at 306; Mot.19–20.

Plaintiffs also do not seriously dispute the equities and public interest. They claim "ongoing and constant risk of harm by reassignment to the Farm Line." Opp.26. But the word *reassignment* proves the

12

opposite: No named Plaintiff benefits from the Order or would be prejudiced by a stay since they do not work the Farm Line.

## CONCLUSION

The State respectfully requests that the Court stay the Order pending appeal.

Respectfully submitted,

Dated: July 9, 2024

ELIZABETH B. MURRILL
Attorney General of Louisiana

*J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA
Solicitor General

OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 506-3746
AguinagaB@ag.louisiana.gov

## CERTIFICATE OF SERVICE

I certify that on July 9, 2024, I filed the foregoing brief with the Court's CM/ECF system, which will automatically send an electronic notice of filing to all counsel of record.

*/s/ J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA

## CERTIFICATE OF COMPLIANCE

Pursuant to Fifth Circuit Rule 32.3, the undersigned certifies that this motion complies with:

(1) the type-volume limitations of Federal Rule of Appellate Procedure 27 (d)(2) because it contains 2599 words; and

(2) the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2016 (the same program used to calculate the word count).

*/s/ J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA

Dated:   July 9, 2024