No. 24-30420

# In the United States Court of Appeals for the Fifth Circuit

VOICE OF THE EXPERIENCED, A MEMBERSHIP ORGANIZATION ON BEHALF OF
ITSELF AND ITS MEMBERS; MYRON SMITH, INDIVIDUALLY AND ON BEHALF OF
ALL OTHERS SIMILARLY SITUATED; DAMARIS JACKSON, INDIVIDUALLY AND
ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; NATE WALKER,
INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED;
DARRIUS WILLIAMS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED; KEVIAS HICKS; JOSEPH GUILLORY; KENDRICK
STEVENSON; ALVIN WILLIAMS,
                                        *Plaintiffs-Appellees*

v.

GARY WESTCOTT, SECRETARY, DEPARTMENT OF PUBLIC SAFETY AND
CORRECTIONS; TIM HOOPER, WARDEN, LOUISIANA STATE PENITENTIARY;
MISTY STAGG, IN HER OFFICIAL CAPACITY AS DIRECTOR OF PRISON
ENTERPRISES, INCORPORATED; LOUISIANA DEPARTMENT OF PUBLIC SAFETY
AND CORRECTIONS; PRISON ENTERPRISES, INCORPORATED,
                                        *Defendants-Appellants*

_____

On Appeal from the United States District Court
for the Middle District of Louisiana
No. 23-cv-1304, Hon. Brian A. Jackson

_____

**APPELLANTS' OPENING BRIEF**

_____

*(Counsel listed on inside cover)*

ELIZABETH B. MURRILL
Attorney General of Louisiana

J. BENJAMIN AGUIÑAGA
Solicitor General

OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 506-3746
AguinagaB@ag.louisiana.gov

## CERTIFICATE OF INTERESTED PERSONS

A certificate of interested persons is not required here because, under the fourth sentence of Fifth Circuit Rule 28.2.1, Appellants—as "governmental" parties—need not furnish a certificate of interested persons.

*/s/ J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA

## STATEMENT REGARDING ORAL ARGUMENT

Because the preliminary injunction at issue in this appeal has expired by operation of law under the Prison Litigation Reform Act, the Court should—pursuant to its usual practice—summarily vacate the preliminary-injunction order and dismiss the appeal as moot. Accordingly, the State respectfully submits that oral argument generally should be unnecessary. If, however, Plaintiffs or the district court attempt to revive the injunction or enter a new preliminary injunction after the filing of this opening brief (which the State would immediately appeal and seek to consolidate with this appeal), that attempt would generate new legal problems, including a circuit split if this Court endorsed such an attempt. In that potential situation, therefore, the State would respectfully request oral argument to address the evolving situation.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ............................................. i

STATEMENT REGARDING ORAL ARGUMENT ................................... ii

TABLE OF AUTHORITIES ....................................................... v

INTRODUCTION ................................................................. 1

JURISDICTIONAL STATEMENT ............................................. 3

ISSUES PRESENTED ............................................................. 4

STATEMENT OF THE CASE ................................................... 5

SUMMARY OF ARGUMENT .................................................. 9

LEGAL STANDARD ............................................................ 12

ARGUMENT ....................................................................... 12

I.   THE COURT SHOULD VACATE THE JULY 2 INJUNCTION ORDER AND DISMISS AS MOOT. ........................................ 12

   A.   The July 2 Injunction Expired on September 30. ................... 12

   B.   Vacatur of the July 2 Injunction Order Is Proper ................... 18

II.   ALTERNATIVELY, THE COURT SHOULD VACATE THE JULY 2 INJUNCTION ORDER ON THE MERITS. ............................... 21

   A.   The July 2 Injunction Order Violates the PLRA. ................... 22

   B.   The July 2 Injunction Order's Eighth Amendment Analysis Is Flawed. ................................................. 26

CONCLUSION .................................................................. 35

CERTIFICATE OF SERVICE .................................................................. 37

CERTIFICATE OF COMPLIANCE ......................................................... 38

# TABLE OF AUTHORITIES

**Cases**

*Ahlman v. Barnes,*
 20 F.4th 489 (9th Cir. 2021) ............................... 14, 15, 16, 17

*Alex A. v. Edwards,*
 2022 WL 3701169 (M.D. La. Aug. 26, 2022) ....................................... 25

*Alloway v. Hodge,*
 72 F. App'x 812 (10th Cir. 2003) ........................................................... 17

*Ball v. LeBlanc,*
 792 F.3d 584 (5th Cir. 2015) ...................................................... 24, 26, 31

*Banks v. Booth,*
 3 F.4th 445 (D.C. Cir. 2021) ................................................................. 16

*Farmer v. Brennan,*
 511 U.S. 825 (1994) .................................................................. 27, 28, 30

*Georgia Advocacy Office v. Jackson,*
 4 F.4th 1200 (11th Cir. 2021) ..................................................... 16, 17, 18

*Gooch v. Life Invs. Ins. Co. of Am.,*
 672 F.3d 402 (6th Cir. 2012) ................................................................. 25

*Grace v. Hooper,*
 2023 WL 2810059 (5th Cir. Apr. 6, 2023) ........................................... 33

*Mayweathers v. Newland,*
 258 F.3d 930 (9th Cir. 2001) ................................................................. 17

*Nken v. Holder,*
 556 U.S. 418 (2009) ............................................................................... 14

*Norbert v. City and Cnty. of San Francisco,*
 10 F.4th 918 (9th Cir. 2021) ..................................................... 11, 24, 25

*Patel v. Tex. Tech Univ.*,
    727 F. App'x 94 (5th Cir. 2018) ............................................................. 33

*Sampson v. King*,
    693 F.2d 566 (5th Cir. 1982) ......................................................... 32, 35

*Smith v. Edwards*,
    88 F.4th 1119 (5th Cir. 2023) ............................... 1, 3, 12, 18, 19, 20, 21

*Valentine v. Collier*,
    956 F.3d 797 (5th Cir. 2020) ...................................... 29, 30, 31, 34, 35

*XL Ins. Am., Inc. v. Turn Servs., L.L.C.*,
    37 F.4th 204 (5th Cir. 2022) ................................................................. 33

*Yang v. Kellner*,
    458 F. Supp. 3d 199 (S.D.N.Y. 2020) .................................................... 25

*Yates v. Collier*,
    677 F. App'x 915 (5th Cir. 2017) ............................................. 1, 3, 18, 19

**Statutes**

18 U.S.C. § 3626 ............................. 1, 10, 11, 13, 14, 15, 16, 17, 22, 23, 24

28 U.S.C. § 1292 ....................................................................................... 3

28 U.S.C. § 1331 ....................................................................................... 3

42 U.S.C. § 1983 ....................................................................................... 3

## INTRODUCTION

This is a prison-conditions case arising out of the Louisiana State Penitentiary (LSP). The district court in this case entered a preliminary injunction on July 2, 2024 (the July 2 Injunction), requiring the State to immediately take certain corrective measures. The State immediately appealed that injunction, which a motions panel of this Court partially stayed pending appeal. ECF No. 41-1. Under the Prison Litigation Reform Act (PLRA), the July 2 Injunction subsequently expired by operation of law on September 30, 2024. *See* 18 U.S.C. § 3626(a)(2) (absent conditions not satisfied here, a preliminary injunction "shall automatically expire on the date that is 90 days after its entry"). In appeals regarding expired preliminary injunctions under the PLRA, this Court's usual practice is to deem the appeal moot and vacate the injunction order. *See, e.g.*, *Smith v. Edwards*, 88 F.4th 1119, 1127 (5th Cir. 2023); *Yates v. Collier*, 677 F. App'x 915, 918 (5th Cir. 2017) (per curiam). The State respectfully requests that the Court follow its usual course here and vacate the July 2 Injunction order.

Because *Smith* and *Yates* require no more than vacatur of the July 2 Injunction order on mootness grounds, this Court need not reach the

merits. If it does, however, reversal or vacatur are independently warranted because the July 2 Injunction order suffers from numerous PLRA and Eighth Amendment defects, not the least of which is that it is undisputed—as the motions panel observed—that no named Plaintiff is or will be subject to the challenged prison conditions during this litigation. Even on the merits, therefore, the outcome of this appeal would be the same. The Court should vacate the July 2 Injunction order.

# JURISDICTIONAL STATEMENT

The district court has jurisdiction over Plaintiffs' 42 U.S.C. § 1983 action under 28 U.S.C. § 1331. The district court entered the "temporary restraining order" at issue in this appeal on July 2, 2024. ROA.3050–127. The State filed a notice of appeal on the same day, ROA.3128–29, and a motion to stay pending appeal in this Court on July 3, 2024, ECF No. 12. On July 12, 2024, a motions panel of this Court held that appellate jurisdiction exists under 28 U.S.C. § 1292(a)(1) because, although "[t]he district court labeled its order as a temporary restraining order," the order "has the practical effect of an injunction." ECF No. 41-1 at 3.

The injunction subsequently expired as a matter of law. *See infra* Argument Section I. Accordingly, the proper course—under the Court's usual practice regarding expired injunctions in PLRA cases—is to vacate the injunction order and dismiss the appeal as moot. *See Smith v. Edwards*, 88 F.4th 1119, 1127 (5th Cir. 2023) ("[W]e dismiss Defendants' appeal as moot and vacate the district court's preliminary injunction."); *Yates v. Collier*, 677 F. App'x 915, 918 (5th Cir. 2017) (per curiam) ("We dismiss the TDCJ's appeal as moot, vacate the district court's order, and remand for proceedings consistent with this opinion.").

## ISSUES PRESENTED

1. Whether, consistent with its ordinary practice regarding expired injunctions under the PLRA, the Court should vacate the July 2 Injunction order and dismiss this appeal as moot.

2. Alternatively, if the appeal is not moot, whether the Court should reverse or vacate the July 2 Injunction order for failure to comply with the PLRA and related Eighth Amendment precedents.

## STATEMENT OF THE CASE

Because of the mootness issue in this case, the State here provides only a succinct summary of the facts relevant to the Court's review.

**1.** Every inmate at LSP has a job. Some work in kitchens, some work in maintenance, and so on. Each inmate's job depends on their own "duty status" as determined by a medical health care provider, as well as their interests and the needs of the facility.

This case involves work on LSP's Farm Line. Broadly speaking, the Farm Line comprises agricultural operations through which fresh fruits and vegetables are planted, cultivated, and harvested according to industry standards solely for prisoner consumption. *See* ROA.2330–31. The crops are not sold to the public, and LSP does not profit. *Id.*

The parties in this case dispute working conditions on the Farm Line. The State submitted voluminous evidence to the district court establishing, among other things, that prisoners work only until about 11:30am; that water, Gatorade, and breaks are available as needed; that prisoners receive protective clothing and equipment, including boots, gloves, and hats; and—at the district court's urging—the State provides sunscreen and canopies for shade. ROA.2331–33; ROA.2975.

One final and important note on the Farm Line: The singular "Line" is a misnomer because there are multiple "lines" to which prisoners are assigned. *See* ROA.3051.

**2.** Plaintiffs in this lawsuit—LSP prisoners—demanded that the district court "enjoin all operations on the Farm Line when heat index values reach or exceed eighty-eight degrees Fahrenheit." *Id.* The district court construed Plaintiffs' request to be limited to "only Lines 15a, 15b, 24, and 25, which are staffed by approximately fifty incarcerated persons at any given time." ROA.3121–22. And Plaintiffs' request is more limited still: During the proceedings below, only two named Plaintiffs were assigned to any of these four lines. As the district court acknowledged, Plaintiff Myron Smith is assigned to Line 15b, but has been "informed [] that he w[ill] no longer be required to work in the field." ROA.3054. In addition, Plaintiff Alvin Williams was previously assigned to Line 25, ROA.3057, but he submitted a supplemental affidavit in this case admitting that he is no longer on the Farm Line, ROA.2859–60. The district court did not acknowledge this fact. <u>The upshot: During the proceedings below, no Plaintiff was or had ever been assigned to Lines</u>

15a and 24; no Plaintiff was currently assigned to Line 25; and no Plaintiff currently works on the Farm Line.[1]

Nonetheless, the district court's July 2 Injunction order issued a sweeping injunction that affects not only the Farm Line and not only LSP, but also the Department of Public Safety and Corrections more generally. Specifically, the Order required the State "to immediately":

1. Correct the deficiencies of Directive No. 13.067 noted herein, including the lack of shade and adequate rest to incarcerated persons laboring on the Farm Line;

2. Correct the problems with Defendants' equipment policies noted herein, including the failure to provide sunscreen and other necessary protective clothing and equipment to those laboring on the Farm Line;

3. Submit a revised and expanded Heat Pathology Medications list;

4. Create a procedure to ensure that all incarcerated persons suffering from health conditions that significantly inhibit thermoregulation are assessed by medical personnel and are granted heat precaution duty status; and

5. Develop an additional heat-related policy to protect those laboring outdoors when heat index values reach or exceed

---

[1] At the stay stage in this Court, Plaintiffs submitted a letter stating that another named Plaintiff—Damaris Jackson—had recently been assigned to Line 24 and refused to work. ECF No. 38. The State submitted a response letter explaining that this was a direct violation of the Warden's standing directive, that Jackson's disciplinary record had been expunged and he is prohibited from working in the field, and that "no named Plaintiff is currently working in the field nor will they be required to do so, indefinitely." ECF No. 39.

7

113 degrees Fahrenheit, the temperature at which the National Weather Service issues excessive heat warnings.

ROA.3126. The Order also requires the State to "submit a memorandum containing their proposed remedies within seven (7) days of the entry of this Ruling and Order," *id.*—while also ordering the State to "make every effort to provide for immediate implementation," ROA.3125.

To clarify references in the Order, Directive No. 13.067 is an LSP policy that provides "a mechanism to identify offenders more vulnerable to heat and to enforce provisions to reduce heat pathology among all offenders." ROA.1032–37 (Directive No. 13.067). It mirrors DPSC's Health Care Policy HCP 8, which applies to all DPSC facilities. *See* ROA.2811–23 (HCP 8). In addition, the referenced "Heat Pathology Medications list" is an attachment to HCP 8, *see* ROA.2817, which identifies medications that present special health and heat risks. If a prisoner is on one of the listed medications, he will receive heat precaution duty status, which, for example, would mean that he is not allowed to work outside when the temperature exceeds 88 degrees Fahrenheit. ROA.2813. As with HCP 8, the Heat Pathology Medications list applies to all DPSC facilities.

**3.** The State filed a notice of appeal immediately after the district court issued its order on July 2. ROA.3128–29. The next day, the State filed an emergency motion for an administrative stay and a stay pending appeal in this Court. ECF No. 12. The motions panel requested the State's assurance of the Court's jurisdiction on July 3, ECF No. 18; the State filed the requested letter demonstrating jurisdiction (with which the motions panel later agreed, ECF No. 41-1 at 3) on July 4, ECF No. 22. The motions panel thereafter entered an administrative stay on July 5. ECF No. 26.

On July 12, the motions panel entered an order granting in part and denying in part the State's stay motion. ECF No. 41-1. Specifically, the panel stayed parts (3), (4), and (5) of the July 2 Injunction order, finding that the State was likely to succeed on the merits of its claims that these provisions violate the PLRA and conflict with relevant Eighth Amendment standards. The panel also determined, however, that the State was unlikely to succeed on any challenge to parts (1) and (2).

## SUMMARY OF ARGUMENT

**I.** The Court need do no more than vacate the July 2 Injunction order and dismiss this appeal as moot.

**A.** The July 2 Injunction expired on September 30—*i.e.*, "90 days after its entry." 18 U.S.C. § 3626(a)(2). The PLRA permits a lengthier period of relief only if "the court makes [certain] findings required" by the PLRA and also "makes the order final before the expiration of the 90-day period." The district court here never made those findings or entered a permanent injunction making the preliminary injunction "final." Accordingly, the July 2 Injunction has now expired.

**B.** This Court's standard practice regarding expired injunctions in PLRA cases is to vacate the injunction order and dismiss the appeal as moot. It should follow the same course here.

**II.** Although the Court cannot reach the merits because of the jurisdictional issue, the State preserves its merits arguments out of an abundance of caution.

**A.** The easiest ground for vacatur lies in the district court's failure to comply with the PLRA. *First*, because no named Plaintiff works on the Farm Line and thus cannot suffer throughout this litigation a "violation of [his] Federal right[s]," the PLRA bars preliminary injunctive relief. 18 U.S.C. § 3626(a)(1). *Second*, properly read, the PLRA generally bars class-wide relief prior to class certification. If the Court held otherwise,

it would create a circuit split with the Ninth Circuit. *See Norbert v. City and Cnty. of San Francisco*, 10 F.4th 918, 928 (9th Cir. 2021). And *third*, as the motions panel recognized, the majority of the injunction's provisions are "overbroad" and violate the PLRA's requirement that injunctions "extend no further than necessary to correction the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a)(1). The Court should thus vacate the injunction.

**B.** If the Court reaches the Eighth Amendment issues, it should vacate for at least three independent reasons. *First*, as a corollary to the primary PLRA defect, because no named Plaintiff is subject to the allegedly unconstitutional conditions, Plaintiffs cannot establish an Eighth Amendment violation that might sustain the preliminary injunction. *Second*, as the motions panel emphasized, the July 2 Injunction is "substantively overbroad" for Eighth Amendment purposes. And *third*, as the motions panel suggested, the July 2 Injunction order is fraught with clearly erroneous legal reasoning barred by this Court's precedents—and the remedy is to vacate and require the district court to justify its order without resorting to these improper bases.

## LEGAL STANDARD

This Court "review[s] a district court's grant of a preliminary injunction under an abuse-of-discretion standard." *Smith*, 88 F.4th at 1124. "But 'a federal court may not rule on the merits of a case without first determining its jurisdiction.'" *Id.* "A claim is moot when a case or controversy no longer exists between the parties." *Id.* (citation omitted).

## ARGUMENT

### I. THE COURT SHOULD VACATE THE JULY 2 INJUNCTION ORDER AND DISMISS AS MOOT.

The Court need do no more than vacate the July 2 Injunction order and dismiss this appeal as moot. There can be no question that the July 2 Injunction expired by operation of law on September 30, 2024. And this Court's typical treatment of expired injunctions under the PLRA is to vacate them and dismiss the corresponding appeal as moot. The Court should thus follow the same route here.

### A. The July 2 Injunction Expired on September 30.

As the district court's July 2 Injunction order explains, the PLRA places significant time constraints on any preliminary relief: "Preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court [(1)] makes the findings

required under subsection (a)(1) for the entry of prospective relief and [(2)] makes the order final before the expiration of the 90-day period." ROA.3123 (quoting 18 U.S.C. § 3626(a)(2)). The district court fulfilled neither of these prerequisites—let alone both—which means the July 2 Injunction automatically expired 90 days later, *i.e.*, on September 30.

**1.** Begin with the district court's failure to make the requisite findings. The phrase "findings required under subsection (a)(1)" generally refers to the PLRA's independent requirement that a court cannot order prospective relief "unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A). The district court never made these findings.

*First*, the district court did not do so in the July 2 Injunction order. The court block-quoted § 3626(a)(1)(A), italicizing that provision's core requirements. ROA.3123. But the court went no further, instead finding that "the appropriate next step is to require that Defendants provide the Court with proposed remedies." ROA.3125; *see also* ROA.3126 ("Defendants shall submit a memorandum containing their proposed

remedies within seven (7) days of the entry of this Ruling and Order."). The July 2 Injunction order itself thus does not contain any § 3626(a)(1)(A) findings.

Because this Court then partially stayed the July 2 Injunction order, the district court never revisited the stayed portion of that order— *i.e.*, "parts (3), (4), and (5) of the district court's order." ECF No. 41-1 at 10; *see* Dist. Ct. ECF No. 109 at 1–2 (district court subsequently acknowledging this Court's partial stay). Accordingly, there can be no dispute that the district court never made the requisite § 3626(a)(1)(A) findings as to that portion of the order. That remains so despite the existence of the stay. As the Ninth Circuit has explained regarding this precise situation, "[a] stay does not make time stand still." *Ahlman v. Barnes*, 20 F.4th 489, 494 (9th Cir. 2021) (quoting *Nken v. Holder*, 556 U.S. 418, 421 (2009)). "While [a] stay may have prevented the injunction from having any further effect, it did not toll the 90-day limit unambiguously detailed in the PLRA." *Id.* Thus, because "[t]he district court did not make the relevant findings under § 3626(a)(1)(A)" as to the stayed portion of the July 2 Injunction order—that is, "the only way to

extend an injunction issued under the PLRA beyond 90 days"—"the injunction here has expired." *Id.*

The same is true of the *un*stayed portion of the July 2 Injunction order. Following this Court's stay decision, the district court received briefing from the parties on implementation of parts (1) and (2) of the order. In its subsequent August 15 order, however, the district court simply ordered the State to comply in certain respects with parts (1) and (2) of the order. *See* Dist. Ct. ECF No. 109 at 5–8 (requiring the State to take measures like "erect[ing] additional pop-up tents"). The district court's August 15 order never mentioned § 3626(a)(1)(A), nor did it purport to find that the ordered implementation measures were "narrowly drawn," "extend[ed] no further than necessary to correct the violation of the Federal right," or were "the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A). It is thus equally clear as to the unstayed portion of the July 2 Injunction order that the district court never made the required § 3626(a)(1)(A) findings.

Again, this is fatal because such findings were a necessary prerequisite to preventing the July 2 Injunction from "automatically

expir[ing]" on September 30. 18 U.S.C. § 3626(a)(2). Since the district court failed to make the findings, the July 2 Injunction has expired.

**2.** Independently fatal is that, even if the district court had made the required § 3626(a)(1)(A) findings, the court did not "make[] the [preliminary-injunction] order final before the expiration of the 90-day period," *id.* § 3626(a)(2)—which independently confirms that the July 2 Injunction expired on September 30.

This Court does not appear to have expounded on what it means to make a preliminary-injunction order "final," but the Eleventh, D.C., and Ninth Circuits have recently said that this requires the conversion of a *preliminary* injunction into a *permanent* injunction. *See Ahlman*, 20 F.4th at 494 ("§ 3626(a)(2) provides no way to extend a preliminary injunction other than making the injunctive relief final."); *Banks v. Booth*, 3 F.4th 445, 448 (D.C. Cir. 2021) ("[I]f a judge enters a preliminary injunction in a suit covered by this section, that injunction will terminate on its 90th day unless the court has rendered it permanent ...."); *Georgia Advocacy Office v. Jackson*, 4 F.4th 1200, 1211 (11th Cir. 2021), *vacated on settlement grounds* 33 F.4th 1325 (11th Cir. 2022) ("[T]he entry of a permanent injunction is necessary to prevent a preliminary injunction

from expiring by operation of law after 90 days under the PLRA's 'unless' clause.").[2]

As the Eleventh Circuit explained in *Jackson*, this makes sense for a number of reasons. For example, a "final" order traditionally refers to one that is "dispositive of the entire case"—and it stands "in direct contrast to interlocutory orders," which address only intermediate matters in the case. 4 F.4th at 1211 (citation omitted). Moreover, if "final" meant only "to complete or perfect the order by making all the required findings for the entry of preliminary injunctive relief," that would create obvious "surplusage" in the statute. *Id.* at 1212. The statute already *independently* requires a court to make those findings under § 3626(a)(1)(A) in order to prevent expiration of the preliminary injunction. *See* 18 U.S.C. § 3626(a)(2). That the statute *separately* requires a court to make its preliminary-injunction order "final" thus cannot be understood to reflect the same requirement that the district

---

[2] On this point, the Ninth Circuit's *Ahlman* decision appears to be in tension with its much older statement that "[n]othing in the [PLRA] limits the number of times a court may enter preliminary relief." *Mayweathers v. Newland*, 258 F.3d 930, 936 (9th Cir. 2001); *see also Alloway v. Hodge*, 72 F. App'x 812, 817 (10th Cir. 2003) (reproducing *Mayweathers*' statement).

court make the requisite findings. *See Jackson*, 4 F.4th at 1213 (This reading would "collapse the two requirements into a single requirement, effectively reading the 'final order' requirement out of the statute. This would contravene the rule that a statute ought to be interpreted, where possible, to give effect to all its language.").

For these and related reasons catalogued in *Jackson*, only the district court's entry of a permanent injunction could forestall the PLRA's automatic expiration of the 90-day clock. And here, there is no question that the district court did not enter such an injunction. For that independent reason, therefore, the July 2 Injunction order automatically expired on September 30.

## B.     Vacatur of the July 2 Injunction Order Is Proper.

**1.** Because the July 2 Injunction has expired, "this appeal is moot" and the only outstanding question is "whether to vacate the district court's order." *Smith*, 88 F.4th at 1126. This Court has repeatedly answered "yes" regarding expired injunctions under the PLRA. It did so first in *Yates. See* 677 F. App'x at 918 ("We dismiss the TDCJ's appeal as moot, vacate the district court's order, and remand for proceedings consistent with this opinion."). It subsequently did so again in *Smith*,

where the Court emphasized that, "[h]aving been frustrated by the vagaries of circumstance, Defendants ought not in fairness be forced to acquiesce in the judgment." 88 F.4th at 1127 (cleaned up and citation omitted). "Accordingly," the *Smith* Court concluded, "we vacate the district court's order." *Id.*

Just so here. The Court's original briefing schedule set the State's opening brief due on August 26, 2024, ECF No. 48, which means that merits briefing (and any oral argument) would not have concluded until after the July 2 Injunction expired on September 30. And as of today— the current due date for the State's opening brief—the September 30 expiration date has passed. As a result, the proper course, as in *Yates* and *Smith*, is to vacate the July 2 Injunction order and dismiss this appeal as moot.

**2.** One final note bears mentioning: This Court's decisions in *Yates* and *Smith* partially explained vacatur in terms of the plaintiffs' failure to seek an "extension" of the preliminary injunction. *See Smith*, 88 F.4th at 1127 ("[T]hough the injunction automatically expired under the PLRA, Plaintiffs could have sought an extension to extend its duration."); *Yates*, 677 F. App'x at 918 ("The TDCJ's appeal is moot because the prisoners

allowed their preliminary injunction to expire."). The State offers three critical responses regarding that "extension" point.

*First*, the "extension" point is unnecessary for vacatur purposes because, as *Smith* explained, vacatur is independently warranted given the vagaries of circumstance and the fact that State official defendants do "not cause mootness by voluntary action" when the PLRA's 90-day clock automatically expires by operation of law. *Smith*, 88 F.4th at 1127. That is completely out of a State official's control—and the Court was exactly right to recognize as much. The Court thus need not address the "extension" point here because independent grounds for vacatur exist.

*Second*, the Court also need not elaborate on the "extension" point here because it is undisputed that Plaintiffs—as of this filing—allowed their preliminary injunction to expire and have not sought any extension. Accordingly, whether the vacatur analysis would be different if Plaintiffs *had* sought some sort of extension is irrelevant.

*Third*, and most fundamentally, the State respectfully submits that the "extension" point—which suggests that plaintiffs can seek and obtain an extension of a preliminary injunction after the 90-day period expires— is incorrect. As discussed above, *supra* Section I.A(2), given the PLRA's

reference to a "final" order, only a *permanent* injunction can "extend" a preliminary injunction under PLRA; in other words, successive or extended preliminary injunctions are barred. Any suggestion that a plaintiff can extend *preliminary* relief through the issuance of more preliminary relief, therefore, is inconsistent with the text of the PLRA. To be clear, however, this final point does not affect the vacatur analysis because—as explained above—vacatur is independently warranted for the reasons explained in *Smith*.

*    *    *

For these reasons, there is no question that the July 2 Injunction order has expired, this appeal is moot, and the Court should vacate the July 2 Injunction order and dismiss the appeal as moot.

## II. ALTERNATIVELY, THE COURT SHOULD VACATE THE JULY 2 INJUNCTION ORDER ON THE MERITS.

Although the Court need not—and given the jurisdictional constraints created by the mootness issue, cannot—reach the merits, the State here briefly preserves its merits arguments out of an abundance of caution. The most straightforward basis for vacatur is the district court's failure to comply with the PLRA in numerous respects. The related

Eighth Amendment defects only underscore those errors. Accordingly, even if the Court reached merits, vacatur would remain proper.

## A.     The July 2 Injunction Order Violates the PLRA.

Start with the PLRA. The PLRA provides that "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a)(1)(A); *see also id.* ("The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."). The Order violates that rule in no fewer than three different ways, each independently requiring vacatur.

**1.** The most obvious problem is that the PLRA bars prospective relief here because there is no "violation of the Federal right of a particular plaintiff or plaintiffs." *Id.* It is undisputed that no named Plaintiff currently works on the Farm Line—on *any* line—and thus no named Plaintiff is subject to the allegedly unconstitutional Farm Line conditions at issue in this case. The motions panel of this Court itself

recognized "the fact that the named plaintiffs are currently indefinitely prohibited from working in the fields." ECF No. 41-1 at 5. It is thus undisputed that there is no current "violation of the Federal right of a particular plaintiff or plaintiffs" that could sustain the July 2 Injunction order. 18 U.S.C. § 3626(a)(1)(A).

At the stay stage, the motions panel thought it unlikely that the State would prevail on this argument, however, because "[i]t is [] not clear that LSP will not resume requiring the named plaintiffs to work in the fields once this litigation ends." ECF No. 41-1 at 5. Respectfully, that is mistaken (but to no fault of the motions panel given the compressed timeframe and expedited briefing at the stay stage). The life of a preliminary injunction, by definition, must expire at least when "th[e] litigation ends." *Id.* Accordingly, the only way the July 2 Injunction may be justified is by targeting the "violation of the Federal right of a particular plaintiff or plaintiffs" before the litigation ends. 18 U.S.C. § 3626(a)(1)(A). *But*, as the motions panel recognized, there will be no such violation at least until "this litigation ends." ECF No. 41-1 at 5. That dooms the July 2 Injunction—and the motions panel was mistaken in reaching its contrary conclusion based on what might happen *after* this

litigation ends, *i.e.* when the preliminary July 2 Injunction could not have any legal effect.

**2.** In addition, the July 2 Injunction—by the district court's admission—"grants relief to any putative class member" even though no class has been certified. ROA.3108. But that reasoning is in direct tension with the PLRA's text and this Court's precedents. *See Ball v. LeBlanc*, 792 F.3d 584, 599 (5th Cir. 2015) ("The PLRA limits relief to the particular plaintiffs before the court."). To be sure, as the motions panel observed (ECF No. 41-1 at 6), *Ball* itself was not a putative class action. But there is no principled basis to say that slapping a "*putative* class action" label on this lawsuit magically removes it from the PLRA's limitation on relief to "a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a)(1)(A). Because no class has been certified here, absent putative class members are not "particular ... plaintiffs" in any sense of that term—they are just potential plaintiffs. Avowedly giving them relief as the district court did, therefore, directly violates the PLRA.

On top of that problem, the Court would create a circuit split if it held otherwise—as the motions panel suggested, *see* ECF No. 41-1 at 6. In *Norbert*—a PLRA case—the Ninth Circuit confronted a request for

"class-wide relief, [where] at the time of the preliminary injunction decision (and now), no class had been certified." 10 F.4th at 928. The Ninth Circuit rejected that request and limited its review "to the named plaintiffs' claims only": "It is well-established that '[w]ithout a properly certified class, a court cannot grant relief on a class-wide basis.'" *Id.* Just so here.

For its part, the district court tried to bolster its improper class-wide—and indeed, DPSC-wide—relief by citing (ROA.3108) a smattering of decisions that are not binding on this Court. Critically, however, none of those decisions was governed by, let alone cited, the PLRA and two did not even enter an injunction. *See Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402 (6th Cir. 2012) (dismissing appeal of motion to dissolve injunction in breach-of-contract case); *Yang v. Kellner*, 458 F. Supp. 3d 199, 218 n.5 (S.D.N.Y. 2020) (entering injunction as to First and Fourteenth Amendment claims regarding the removal of names from a presidential primary ballot); *see also Alex A. v. Edwards*, 2022 WL 3701169, at *3 (M.D. La. Aug. 26, 2022) (discussing, but not entering, a class-wide preliminary injunction). These cases thus do not alter the fact that the district court's grant of class-wide relief violates the PLRA.

**3.** Finally, and as the motions panel agreed, ECF No. 41-1 at 5, the July 2 Injunction order is demonstrably overbroad, which independently requires vacatur. *See Ball*, 792 F.3d at 599 (Under the PLRA, "[b]efore a district court can award [injunctive] relief, it must find that 'such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation.'"). Specifically, "parts (3), (4), and (5) of the order appear to reach beyond LSP to cover the entire Louisiana Department of Public Safety and Corrections, rather than just those working on LSP's Farm Line." ECF No. 41-1 at 6. The motions panel was exactly right. The policy changes demanded in those portions of the July 2 Injunction order would cover the entire Department. And "[t]hat violates the PLRA" since this lawsuit involves only the Farm Line. *Id.*

For any and all of these reasons, therefore, the Court should vacate the July 2 Injunction order on the merits.

## B. The July 2 Injunction Order's Eighth Amendment Analysis Is Flawed.

Although the Court also need not reach the merits of Plaintiffs' Eighth Amendment claim to grant a stay, it bears noting that the district court's Eighth Amendment analysis is plainly wrong.

**1.** At the outset, and as a corollary to the fatal PLRA defects, the district court's Eighth Amendment analysis never mentions a single example of a current Eighth Amendment violation against a named Plaintiff. *See* ROA.3109–20. For good reason: None exists, because no Plaintiff currently works on the Farm Line or will work on the Farm Line at least until "this litigation ends." ECF No. 41-1 at 5. That means Plaintiffs' Eighth Amendment claim, at least for preliminary-injunction purposes, is squarely barred under *Farmer v. Brennan*, 511 U.S. 825 (1994). There, the Court emphasized that a prisoner seeking a permanent Eighth Amendment injunction "must demonstrate the continuance of [the Eighth Amendment violation] during the remainder of the litigation and into the future"—and defendants "may rely on ['developments that postdate the pleadings and pretrial motions'] to establish that the inmate is not entitled to an injunction." *Id.* at 846. That is the case here: It is undisputed that no Plaintiff will work on the Farm Line during this litigation, and thus, there is no Eighth Amendment violation as to any Plaintiff that could warrant the preliminary injunctive relief ordered by the district court. That ends this appeal on the merits.

At the stay stage, the motions panel suggested otherwise by citing *Farmer*'s footnote 9, which refers to the potential need for prison officials to show "that they would not revert to their obduracy upon cessation of the litigation." ECF No. 41-1 at 5–6 (quoting *Farmer*, 511 U.S. at 846 n.9). But, for the reasons explained above, *see supra* Section II.A(1), that requirement makes no sense in a case like this, which turns on the propriety of *preliminary* injunctive relief. The only relevant question is whether Plaintiffs will be subject to the allegedly unconstitutional conditions *before* the cessation of litigation, not *after* it. As a result, any rule for *permanent* injunctive relief suggested in *Farmer*'s footnote 9 is inapplicable here.

**2.** Separately, and as the motions panel suggested, parts (3), (4), and (5) of the district court's order are "substantively overbroad." ECF No. 41-1 at 8. For example, part (5) requires a new policy regarding outdoor labor when heat index values hit 113 degrees Fahrenheit. ROA.3126. But the district court "failed to point to [any] evidence demonstrating the State's deliberate indifference with respect to part (5)." ECF No. 41-1 at 9. Similarly, part (4) demands revisions to the Heat Pathology Medications list, "[b]ut the district court cited scant evidence

for the conclusion that its deliberate indifference finding should extend beyond heat risks generally to the claims of heat-sensitive inmates specifically, such as how the State determines which medications are placed on the Heat Pathology Medications list or whether a particular inmate should receive a heat precaution duty status." *Id.*

Likewise, part (3) requires a procedure for granting heat precaution duty status to prisoners with heat-sensitive health conditions—but LSP "already appears to have [that] policy":

> The DPSC-wide HCP8 policy directs "each DPS&C facility" to "have a mechanism to identify offenders more vulnerable to heat and to enforce provisions to reduce heat pathology among all offenders." And LSP's Directive No. 13.067 provides additional information about how this process works. For example, Directive No. 13.067 notes that a "health care practitioner/provider determines on a case-by-case basis if a heat precaution duty status is to be ordered based on the offender's chronic disease and/or prescribed medications."

*Id.* This demonstrates not only that the order is substantively overbroad, but also that the order is in forbidden *Pennhurst* land. *See Valentine v. Collier*, 956 F.3d 797, 802 (5th Cir. 2020) (holding that the Texas Department of Criminal Justice was "likely to succeed on appeal insofar as the district court enjoined the State to follow its own laws and procedures," because "*Pennhurst* plainly prohibits such an injunction").

The majority of the July 2 Injunction order's demands, therefore, are unquestionably overbroad, which independently compels vacatur.

**3.** Finally, on the merits of the Eighth Amendment deliberate-indifference inquiry, the State highlighted a few aspects of the order that are simply wrong—and the motions panel indicated that it "might agree with the State" if those aspects were the "sole[]" basis of the district court's order. ECF No. 41-1 at 7–8.

**a.** To begin, like the district court in *Valentine*, the district court here improperly "collapsed the objective and subjective components of the Eighth Amendment inquiry established in *Farmer*, treating inadequate measures as dispositive of the Defendants' mental state." 956 F.3d at 802. In *Valentine*, the district court pointed to the defendants' "general awareness of the dangers posed by COVID-19" as evidence that the defendants "subjectively believe[d] the measures they [were] taking [were] inadequate." *Id.* But this Court rejected that tack because "the evidence shows that TDCJ has taken and continues to take measures—informed by guidance from the CDC and medical professionals—to abate and control the spread of the virus." *Id.* "Although the district court might

do things differently, mere 'disagreement' with TDCJ's medical decisions does not establish deliberate indifference." *Id.* at 803.

So too here. For example, the district court pointed to the State's "own policies" *created to protect prisoners* as evidence of deliberate indifference. ROA.3117 ("Such policies make it clear that Defendants are cognizant of the threats that high heat imposes to human life and safety, both for the regular population of inmates and those exhibiting enhanced heat-susceptibility."). Similarly, the district court pointed to the fact that the State summarily denied 11 heat-related grievances on the ground that they "were 'false' and held 'no merit.'" ROA.3116. That, the district court said, "weighs in favor of a finding of deliberate indifference." *Id. How?* The district court identified no basis to dispute the grounds for denial, and so how could evidence like this suggest deliberate indifference? Again, "mere 'disagreement' with [the State's] medical decisions does not establish deliberate indifference," *Valentine*, 956 F.3d at 803—and the district court never parsed between the objective and subjective elements of deliberate indifference as this Court's cases require. *See id.* at 802–03; *see also Ball*, 792 F.3d at 595 (grievances are

"not even particularly strong evidence" that "a prison official is aware of facts from which he can deduce a risk of harm").

In addition, the district court heavily relied on private labor guidelines "from various national and state agencies" to suggest that somehow the State is deliberately indifferent. ROA.3113; *see also* ROA.3095 (the district court "has conducted a review of operative federal and state requirements for heat safety in agricultural settings, *and preliminarily concludes that [LSP] fails to meet the minimum standards set forth by such regulations*." (emphasis added)); *see also* ROA.3097–100 (relying on Green declaration that "farming operations at [LSP] do not meet industry standards"); ROA.3113–14 (same).

This Court, however, has long held that, "[i]n operating a prison," "the state is not constitutionally required to observe all the safety and health standards applicable to private industry." *Sampson v. King*, 693 F.2d 566, 569 (5th Cir. 1982). Instead, federal courts "must use constitutional standards as the measure." *Id.* And that is especially so in agricultural cases such as this where the conditions faced by America's farmers are obvious comparators. *See id.* ("Prison officials should not be held to a higher standard of care than that practiced by responsible

farmers in the surrounding agricultural community. A prison farm which adheres to the reasonable customs and usages of the surrounding area cannot be said to be imposing cruel and unusual punishment.").

**b.** Again, the motions panel indicated that it "might agree with the State" that these many errors would doom the July 2 Injunction order if they were the sole bases for the order. ECF No. 41-1 at 8. But the motions panel emphasized that "deliberate indifference is based on 'the totality of the record evidence,'" and the district court "additionally relied on several other sources of evidence" that might sustain the order. *Id.* Two quick responses to this reasoning.

*First*, because the district court's errors blanket the order, the proper route is to vacate the injunction and remand so that the district court can properly apply the law and determine whether its order can survive with the errors omitted. This Court routinely follows this vacate-and-remand procedure when a district court fails to correctly apply the law. *See, e.g.*, *XL Ins. Am., Inc. v. Turn Servs., L.L.C.*, 37 F.4th 204, 207 (5th Cir. 2022); *Grace v. Hooper*, 2023 WL 2810059, at *3 (5th Cir. Apr. 6, 2023); *Patel v. Tex. Tech Univ.*, 727 F. App'x 94, 95 (5th Cir. 2018). It should do the same here, requiring the district court to substantiate its

Eighth Amendment deliberate-indifference findings without resorting to the grounds obviously barred by this Court's precedents.

*Second*, the district court almost certainly cannot do so, which gives the Court a window to simply reverse outright. The motions panel cited the district court's reliance on the prison's "own educational materials, which specifically recommend, for example, avoiding heat-related illnesses by 'tak[ing] rest periods in shady or cool areas' and 'us[ing] a sunscreen that is at least SPF 15.'" ECF No. 41-1 at 8. But *Valentine* rejects reliance on policies and procedures intended to *protect prisoners* as evidence of a defendant's "subjective deliberate indifference." 956 F.3d at 802 (rejecting argument that "general awareness of the dangers" and a prison's responsive "measures" show deliberate indifference). The motions panel also cited "medical records showing that multiple inmates working on the Farm Line experienced symptoms consistent with heat-related illnesses." ECF No. 41-1 at 8. But such alleged records on their own do not automatically show the State's "subjective deliberate indifference." *Valentine*, 956 F.3d at 802.

Finally, the motions panel stated that "common sense indicates that working for long hours in the summer sun without shade, sufficient

rest, or adequate protective equipment poses serious health risks." ECF 41-1 at 8. But this Court requires "*evidence* of the Defendants' subjective deliberate indifference." *Valentine*, 956 F.3d at 802 (emphasis added). And this "common sense" reasoning appears to run into the *Sampson* problem highlighted above, which is that subjecting a prisoner to the "reasonable customs and usages" of surrounding private agricultural operations "cannot be said to be imposing cruel and unusual punishment. *Sampson*, 693 F.2d at 569.

Again, at a minimum, there is enough doubt here to warrant vacatur and remand, if not outright reversal.

## CONCLUSION

The State respectfully requests that the Court vacate the July 2 Injunction order and dismiss this appeal as moot. Alternatively, the State respectfully requests that the Court vacate the July 2 Injunction on the merits.

Respectfully submitted,

Dated:    October 9, 2024

ELIZABETH B. MURRILL
Attorney General of Louisiana

*/s/ J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA
Solicitor General

OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 506-3746
AguinagaB@ag.louisiana.gov

## CERTIFICATE OF SERVICE

I certify that on October 9, 2024, I filed the foregoing brief with the Court's CM/ECF system, which will automatically send an electronic notice of filing to all counsel of record.

*/s/ J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA

## CERTIFICATE OF COMPLIANCE

Pursuant to Fifth Circuit Rule 32.3, the undersigned certifies that this motion complies with:

(1) the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7) because it contains 6855 words; and

(2) the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2016 (the same program used to calculate the word count).

*/s/ J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA

Dated:    October 9, 2024