# In the United States Court of Appeals for the Fifth Circuit

VOICE OF THE EXPERIENCED, A MEMBERSHIP ORGANIZATION ON
BEHALF OF ITSELF AND ITS MEMBERS; MYRON SMITH,
INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY
SITUATED; DAMARIS JACKSON, INDIVIDUALLY AND ON BEHALF OF
ALL OTHERS SIMILARLY SITUATED; NATE WALKER, INDIVIDUALLY
AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; DARRIUS
WILLIAMS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED; KEVIAS HICKS; JOSEPH GUILLORY; KENDRICK
STEVENSON; ALVIN WILLIAMS,
*Plaintiffs-Appellees*

v.

GARY WESTCOTT, SECRETARY, LOUISIANA DEPARTMENT OF PUBLIC
SAFETY AND CORRECTIONS; TIM HOOPER, WARDEN, LOUISIANA
STATE PENITENTIARY; MISTY STAGG, IN HER OFFICIAL CAPACITY AS
DIRECTOR OF PRISON ENTERPRISES, INCORPORATED; LOUISIANA
DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS; PRISON
ENTERPRISES, INCORPORATED,
*Defendants-Appellants*

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA
(NO. 23-CV-1304) (THE HONORABLE BRIAN A. JACKSON)*

**BRIEF OF APPELLEES VOICE OF THE EXPERIENCED, MYRON SMITH, DAMARIS
JACKSON, NATE WALKER, DARRIUS WILLIAMS, KEVIAS HICKS, JOSEPH
GUILLORY, KENDRICK STEVENSON, AND ALVIN WILLIAMS**

*(Counsel listed on inside cover)*

LYDIA WRIGHT
SAMANTHA BOSALAVAGE
THE PROMISE OF JUSTICE INITIATIVE
1024 Elysian Fields Avenue
New Orleans, LA 70117
Tel: (504) 529-5955
*lwright@defendla.org*
*sbosalavage@defendla.org*

JOSHUA HILL JR.
JEREMY A. BENJAMIN
ARIELLE B. MCTOOTLE
LEAH R. WEISER
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel.: (212) 373-3000
*jhill@paulweiss.com*
*jbenjamin@paulweiss.com*
*amctootle@paulweiss.com*
*lweiser@paulweiss.com*

AMARIS MONTES
RIGHTS BEHIND BARS
416 Florida Avenue NW, Ste. 26152
Washington, D.C. 20001
Tel: (202) 455-4399
*amaris@rightsbehindbars.org*

**CERTIFICATE OF INTERESTED PERSONS**

_____

The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

| **Parties** | **Counsel and Law Firms** |
|---|---|
| PLAINTIFFS–APPELLEES<br>Voice of the Experienced<br>also known as VOTE;<br>Myron Smith, Damaris Jackson,<br>Nate Walker, Darrius Williams,<br>Kevias Hicks, Joseph Guillory,<br>Kendrick Stevenson, and<br>Alvin Williams | PROMISE OF JUSTICE INITIATIVE<br>Lydia Wright;<br>Samantha Bosalavage<br><br>RIGHTS BEHIND BARS<br>Amaris Montes<br><br>PAUL, WEISS, RIFKIND, WHARTON,<br>& GARRISON, LLP<br>Joshua Hill Jr.;<br>Jeremy A. Benjamin;<br>Arielle B.  McTootle;<br>Leah R.  Weiser |
| DEFENDANTS–APPELLANTS<br>Gary Westcott, Secretary,<br>Department of Public Safety and<br>Corrections;<br>Tim Hooper, Warden, Louisiana<br>State Penitentiary;<br>Misty Stagg, In Her Official<br>Capacity as Director of Prison<br>Enterprises, Incorporated;<br>Louisiana Department of Public<br>Safety and Corrections;<br>Prison Enterprises, Incorporated | KEOUGH, COX & WILSON, LTD.<br>Andrew Blanchfield;<br>C.  Reynolds Leblanc;<br>Chelsea A.  Payne<br><br>ATTORNEY GENERAL OF LOUISIANA<br>Elizabeth B. Murrill;<br>J.  Benjamin Aguiñaga |

*/s/ Jeremy A. Benjamin*
JEREMY A. BENJAMIN

*Attorney for Plaintiffs-
Appellees*

DECEMBER 9, 2024

# STATEMENT REGARDING ORAL ARGUMENT

The parties agree that the preliminary injunction at issue in this appeal has expired by operation of law under the Prison Litigation Reform Act ("PLRA"). Accordingly, Defendants-Appellants' appeal is moot and can and should be dismissed on jurisdictional grounds without the need for oral argument. Plaintiffs-Appellees contest, however, that Defendants-Appellants have shown entitlement to the extraordinary remedy of vacatur of the district court's preliminary injunction order, but, like Defendants-Appellants, do not request oral argument on this issue. Plaintiffs-Appellees further contest the alternative relief sought by Defendants-Appellants, i.e., a holding that the district court erred on the merits in issuing that order. If the Court determines that adjudication on the merits is warranted, Plaintiffs-Appellees respectfully request oral argument.

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION..........................................................................1

STATEMENT OF THE ISSUES...........................................................................2

STATEMENT OF THE CASE.............................................................................6

SUMMARY OF THE ARGUMENT ...................................................................13

STANDARD OF REVIEW ...............................................................................15

ARGUMENT ....................................................................................................16

I.   THE COURT SHOULD DISMISS THE APPEAL AS MOOT, BUT
     IT SHOULD NOT VACATE THE DISTRICT COURT'S ORDER ...........16

     A.   Because the Preliminary Injunction Has Expired by Operation
          of Law, the Appeal Is Moot and Should Be Dismissed on
          Jurisdictional Grounds.........................................................................16

     B.   Defendants-Appellants Have Not Shown Entitlement to the
          Extraordinary Remedy of Vacatur .......................................................17

II.  THE DISTRICT COURT'S INJUNCTION WAS SOUND ON THE
     MERITS.....................................................................................................23

     A.   The Injunction Comports with the PLRA ...........................................24

          1.   Defendants-Appellants' Assertion That There Are No
               Plaintiffs-Appellees on the Farm Line Is False ......................24

          2.   The District Court Did Not Abuse Its Discretion by
               Ordering Class-Wide Injunctive Relief ...................................27

          3.   The Relief Ordered Was Not Overbroad .................................31

     B.   The District Court Correctly Applied the Law Under the Eighth
          Amendment ...........................................................................................32

          1.   The District Court Properly Identified Ongoing Eighth
               Amendment Violations............................................................32

          2.   The District Court Did Not Err in Finding That
               Defendants-Appellants Acted with Deliberate
               Indifference ............................................................................35

CONCLUSION ................................................................................................41

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alex A.* v. *Edwards*,
  2022 WL 3701169 (M.D. La. Aug. 26, 2022) ..................................................28

*Ball* v. *LeBlanc*,
  792 F.3d 584 (5th Cir. 2015) ..............................................................27, 33, 35

*Barbee* v. *Collier*,
  2022 WL 16860944 (5th Cir. Nov. 11, 2022) ..................................................27

*Blackmon* v. *Garza*,
  484 F. App'x 866 (5th Cir. 2012) ...................................................................38

*Brinsdon* v. *McAllen Indep. Sch. Dist.*,
  863 F.3d 338 (5th Cir. 2017) ....................................................................1, 15, 17

*Daves* v. *Dallas Cty.*,
  64 F.4th 616 (5th Cir. 2023) ...........................................................................15

*Farmer* v. *Brennan*,
  511 U.S. 825 (1994) ....................................................................................33, 34

*Franciscan All., Inc.* v. *Becerra*,
  47 F.4th 368 (5th Cir. 2022) .......................................................................18, 19

*Gates* v. *Cook*,
  376 F.3d 323 (5th Cir. 2004) ...........................................................................38

*Gooch* v. *Life Investors Insurance Co. of America*,
  672 F.3d 402 (6th Cir. 2012) ...........................................................................29

*Hall* v. *Louisiana*,
  884 F.3d 546 (5th Cir. 2018) ..................................................................17, 18, 20

*Helling* v. *McKinney*,
  509 U.S. 25 (1993) ...........................................................................................33

*Hinojosa* v. *Livingston*,
  807 F.3d 657 (5th Cir. 2015) ...........................................................................36

*Hornbeck Offshore Servs., LLC* v. *Salazar*,
  396 F. App'x 147 (5th Cir. 2010) ........................................................30

*Horton* v. *Cockrell*,
  70 F.3d 397 (5th Cir. 1995) ...............................................................33

*Jackson Women's Health Org.* v. *Currier*,
  760 F.3d 448 (5th Cir. 2014) .............................................................18

*Lee* v. *Orr*,
  2013 WL 6490577 (N.D. Ill. Dec. 10, 2013)......................................28

*McNeil* v. *Cmty. Prob. Servs., LLC*,
  2019 WL 633012 (M.D. Tenn. Feb. 14, 2019)....................................28

*F.D.I.C.* v. *Mijalis*,
  15 F.3d 1314 (5th Cir. 1994) .............................................................24

*Ministry of Oil of the Republic of Iraq* v. *Kurdistan Region of Iraq*,
  634 F. App'x 953 (5th Cir. 2015) ..................................................1, 17

*Motient Corp.* v. *Dondero*,
  529 F.3d 532 (5th Cir. 2008) .............................................................23

*O.B.* v. *Norwood*,
  170 F. Supp. 3d 1186 (N.D. Ill. 2016)................................................28

*Robinson* v. *Ardoin*,
  86 F.4th 574 (5th Cir. 2023) .............................................................15

*Rodriguez* v. *Providence Cmty. Corrs., Inc.*,
  155 F. Supp. 3d 758 (M.D. Tenn. 2015) ............................................28

*Rollins* v. *Home Depot USA*,
  8 F.4th 393 (5th Cir. 2021) ...............................................................24

*Sampson* v. *King*,
  693 F.2d 566 (5th Cir. 1982) .............................................................38

*Schlotzsky's Ltd.* v. *Sterling Purchasing & Nat. Distrib. Co.*,
  520 F.3d 393 (5th Cir. 2008) .............................................................30

*Smith* v. *Ark. Dep't of Corr.*,
  103 F.3d 637 (8th Cir. 1996) ................................................................26

*Smith* v. *Edwards*,
  88 F.4th 1119 (5th Cir. 2023) ...............................................19, 22, 30

*Staley* v. *Harris Cty.*,
  485 F.3d 305 (5th Cir. 2007) .........................................................17, 19

*Su* v. *Cactus Canyon Quarries, Inc.*,
  2024 WL 4003536 (5th Cir. 2024) ...................................................23

*Valentine* v. *Collier*,
  956 F.3d 797 (5th Cir. 2020) .........................................................37, 40

*Williams* v. *Edwards*,
  87 F.3d 126 (5th Cir. 1996) ................................................................26

*Yang* v. *Kellner*,
  458 F. Supp. 3d 199 (S.D.N.Y. 2020), *aff'd*, 960 F.3d 119 (2d Cir.
  2020) ....................................................................................................28

*Yates* v. *Collier*,
  677 F. App'x 915 (5th Cir. 2017) .....................................................22

**Statutes**

28 CFR § 35.104 .......................................................................................6, 7

18 U.S.C. § 3626(a)(1)(A) ...................................................................26, 27

18 U.S.C. § 3626(a)(2) .........................................................................13, 16

**Other Authorities**

Rule 31 .......................................................................................................20

## STATEMENT OF JURISDICTION

On July 2, 2024, the district court issued its Ruling and Order granting in part and denying in part Plaintiffs-Appellees' Application for a Preliminary Injunction and Temporary Restraining Order (the "Order"). ROA.3050. The same day, Defendants-Appellants filed their notice of appeal as to that Order. ROA.3128. The parties agree that the injunctive relief issued by the district court has expired, and, accordingly, that the appeal is moot. *See* ECF No. 65, Appellants' Opening Brief ("App. Br.") at 20; *infra* Section I. Because the appeal is moot, Plaintiffs-Appellees respectfully submit that the Court lacks jurisdiction to consider the merits of the appeal. *See Ministry of Oil of the Republic of Iraq* v. *Kurdistan Region of Iraq*, 634 F. App'x 953, 956, 958 (5th Cir. 2015) (quotations omitted) ("Whether an appeal is moot is a jurisdictional issue because it implicates Article III's requirement of a live case or controversy. . . . Where no controversy remains . . . this court will not pass upon the merits."); *Brinsdon* v. *McAllen Indep. Sch. Dist.*, 863 F.3d 338, 345 (5th Cir. 2017) ("Mootness is a jurisdictional matter.").

## STATEMENT OF THE ISSUES

1. Whether, in light of the uncontested mootness of this appeal, the Court should dismiss the appeal as moot, or instead, should additionally vacate the Order, despite Defendants-Appellants' failure to demonstrate that the extraordinary equitable remedy of vacatur is warranted.

2. Alternatively, whether the district court's Order—which did not enjoin the Farm Line as Plaintiffs-Appellees requested but instead required Defendants-Appellants to propose narrowly tailored remedial measures—comported with the PLRA and the Eighth Amendment.

## PRELIMINARY STATEMENT

On July 2, 2024, in a 78-page opinion based on an extensive evidentiary record, the district court granted Plaintiffs-Appellees' request for preliminary relief finding that Plaintiff-Appellees were likely to establish that the operation of the Louisiana State Penitentiary's Farm Line during periods of extreme heat violated the Eighth Amendment and ordering Defendants-Appellants to propose a plan to remedy and "alter Farm Line working conditions to protect human health and safety."

Defendants-Appellants immediately filed a notice of appeal and sought an emergency stay of the district court's injunction. Ten days later, a motions panel of this Court rejected significant portions of that stay motion, finding that Defendants-Appellants were unlikely to succeed on overturning those portions of the order on appeal. After that decision, Defendants-Appellants drastically slowed their prosecution of this appeal, waiting 99 days from the issuance of the district court's order to file their opening brief. When they finally did file, their primary argument was that the Court should dismiss the appeal as moot—they address the merits of their appeal only "alternatively" through arguments that are largely identical to those made in their stay motion.

Plaintiffs-Appellees agree that the district court's order has expired by operation of law under the PLRA, making this appeal moot and that, accordingly, this Court should dismiss the appeal on jurisdictional grounds.

There is no basis, however, to take the further step that Defendants-Appellants request, and vacate the preliminary injunction. In fact, doing so would be improper because Defendants-Appellants have failed to demonstrate that they are entitled to that extraordinary form of equitable relief. They have not attempted to show that vacatur is in the public interest, which it is not. Nor did Plaintiffs-Appellees' unilateral actions deny Defendants-Appellants the opportunity to litigate their appeal on the merits. To the contrary, their appeal's mootness results from Defendants-Appellants' own gamesmanship and deliberate choice to run the clock knowing, based on the motions panel's prior ruling, that they were unlikely to prevail on the merits and also knowing that Plaintiffs-Appellees would have no reason to seek an extension of heat-related preliminary relief once the weather cooled. Vacatur, therefore, is unwarranted.

Given the undisputed mootness of this appeal, the Court can and should dismiss it on jurisdictional grounds. Should the Court reach the merits, however, it should affirm district court's order. Defendants-Appellants have not and cannot demonstrate that the district court abused its discretion in granting the preliminary injunction. Instead, it is clear that the district court was correct in holding—based largely on uncontested evidence—that Plaintiffs-Appellees are likely to establish that Defendants-Appellants violated the Eighth Amendment because conditions on the Farm Line during high heat indices exposed Plaintiffs-Appellees to a substantial

risk of serious harm and that Defendants-Appellants are deliberately indifferent to that risk.

## STATEMENT OF THE CASE

At the Louisiana State Penitentiary ("LSP" or "Angola"), Defendants-Appellants force incarcerated men to perform punitive, dangerous, and degrading agricultural labor on the "Farm Line," the compulsory disciplinary program that is the subject of this litigation. On the Farm Line, men are required to labor in former plantation fields under conditions that resemble chattel slavery and that are designed to make the work more difficult and painful than is necessary. LSP currently operates the Farm Line out of Camps C and D, and divides the men and the work into groups known as Lines 15, 15b, 24, and 25.

While the conditions on the Farm Line are unconstitutional year-round, they are especially dangerous during the peak summer months when heat indices in the fields at Angola regularly exceed 88 degrees Fahrenheit, a threshold widely accepted by experts and governmental entities as posing significant risks to human health and safety from heat-related illness. During periods of high heat, Defendants-Appellants expose men on the Farm Line to life threatening heat for prolonged periods without providing basic protections like shade, regular breaks to hydrate and cool down, sunscreen, and essential protective equipment.

On September 16, 2023, Plaintiffs-Appellees filed this putative class action on behalf of themselves and all others similarly situated, seeking to enjoin the Farm Line as unconstitutional under the Eighth Amendment, Title II of the Americans

with Disabilities Act, and Section 504 of the Rehabilitation Act. ROA.25. Plaintiffs-Appellees amended their complaint on December 15, 2023. ROA.198. At the time of filing, Plaintiffs-Appellees included eight individual men incarcerated at Angola, all of whom were at the time either assigned to or at risk of being assigned to the Farm Line, and Voice of the Experienced ("VOTE"), a nonprofit membership group comprised of currently and formerly incarcerated people, including incarcerated individuals who are assigned to or at risk of being assigned to the Farm Line. *Id.*

On May 13, 2024, in light of the impending summer season, and the imminent attendant risks of heat-related illness, Plaintiffs-Appellees filed in the district court an Application for a Preliminary Injunction and Temporary Restraining Order (the "PI Motion"). *See* ROA.345. There, Plaintiffs-Appellees asked the district court to enjoin Defendants-Appellants from operating the Farm Line when the heat index meets or exceeds 88 degrees Fahrenheit. ROA.353. At the time Plaintiffs-Appellees filed the PI Motion, two named plaintiffs, Myron Smith and Alvin Williams, were assigned to the Farm Line. ROA.3053; ROA.3057.

On May 16, 2024, the district court held a conference on the PI Motion at which the court set a briefing schedule and instructed Defendants-Appellants to inform the court if any of the named plaintiffs suffered injury. Mere hours later, LSP officials reassigned Alvin Williams to a new housing unit off the Farm Line,

and separately informed Myron Smith that he would not be required to go out into the fields, although he remained housed at Camp D and was not given a new job assignment other than the Farm Line.  ROA.2859; ROA.2863.

Both parties submitted extensive evidence in connection with the PI Motion. The evidentiary record on the PI Motion included numerous internal LSP policies; declarations from Plaintiffs-Appellees, other men incarcerated at LSP, and Louisiana Department of Public Safety & Corrections ("DOC") and LSP staff; and voluminous DOC materials, including disciplinary and medical records.  Plaintiffs-Appellees additionally submitted declarations from Dr. Susi Vassallo, an expert in thermoregulation, who opined on the significant health risks attendant to "prolonged exposure to heat" for men working the Farm Line, ROA.381, and from Marguerite Green, an expert in farming practices, who opined that the Farm Line does not meet basic work, health, or safety standards applicable to agricultural labor, particularly in conditions of excessive heat and humidity, ROA.565.  Defendants-Appellants did not submit any expert materials.  In addition to the parties' briefing and the over 90 exhibits submitted, the district court heard further oral argument on June 18, 2024.

On July 2, the district court issued a Ruling and Order granting in part and denying in part the PI Motion.  *See* ROA.3050 (the "Order").  In the Order, the district court painstakingly marched through the thousands of pages of record evidence that had been submitted by the parties and concluded that, based on the

totality of the evidence, Plaintiffs-Appellees had demonstrated a substantial likelihood of success on the merits of their claim that the conditions on the Farm Line during the summer months violate the Eighth Amendment due to the substantial risk of serious heat-related harm and Defendants-Appellants' deliberate indifference to that risk.  ROA.3109.  Yet the district court did not issue an injunction requiring LSP to cease operation of the Farm Line when heat indices exceed 88 degrees, as Plaintiffs-Appellees had requested.  ROA.3123.  Instead, the district court granted much more limited relief, merely requiring Defendants-Appellants to propose necessary remedies to address the constitutional defects identified in the Order. Specifically, the district court ordered Defendants-Appellants to:

> (1)    Correct the deficiencies of Directive No. 13.067 noted herein, including the lack of shade and adequate rest provided to incarcerated persons laboring on the Farm Line;
>
> (2)    Correct the problems with Defendants' equipment policies noted herein, including the failure to provide sunscreen and other necessary protective clothing and equipment to those laboring on the Farm Line;
>
> (3)    Submit a revised and expanded Heat Pathology Medications list;
>
> (4)    Create a procedure to ensure that all incarcerated persons suffering from health conditions that significantly inhibit thermoregulation are assessed by medical personnel and are granted heat precaution duty status; and
>
> (5)    Develop an additional heat-related policy to protect those laboring outdoors when heat index values reach or exceed 113 degrees Fahrenheit, the temperature at which

the National Weather Service issues excessive heat warnings.

ROA.3126.

Defendants-Appellants promptly filed a notice of appeal as to the Order on July 2, 2024, hours after the Order was docketed, *see* ROA.3128, and moved this Court for an administrative stay and a stay pending appeal the very next day, *see* ECF No. 12. In their stay motion, Defendants-Appellants argued, among other things, that the injunction was prohibited under the PLRA because no named plaintiff was assigned to the Farm Line, *see id.*, an argument not made to the district court and one that Plaintiffs-Appellees disputed on both factual and legal grounds, *see* ECF No. 31.

Also on or around July 2, LSP reassigned named plaintiff Damaris Jackson to the Farm Line and called him to work in the fields. ECF No. 38 at 4. Mr. Jackson refused to work in the fields and as a consequence was punished with loss of canteen and loss of phone for four weeks. *Id.* Defendants-Appellants subsequently filed a letter claiming that Mr. Jackson's assignment to the Farm Line had been accidental and that LSP had reversed his disciplinary punishment, *see* ECF No. 39; by this point, however, Mr. Jackson had already suffered a loss of canteen and phone privileges.[1]

---

[1] On information and belief, in November 2024, another named plaintiff, Darrius Williams, was transferred to Camp D, where he was told by numerous prison

10

On July 12, the motions panel—comprised of Judges Ho, Wilson, and Ramirez—denied the stay motion as to parts (1) and (2) of the Order, holding that Defendants-Appellants were not likely to succeed on the merits of their challenge to these portions of the Order. *See* ECF No. 41-1 ("Stay Op.") at 9. The motions panel granted the stay motion as to parts (3), (4), and (5) of the Order, holding that those portions reached beyond LSP's operation of the Farm Line into DOC operations generally, and, therefore, violated the PLRA's requirement that injunctions be as narrow as possible. *Id.* at 9–10.

On August 15, after receiving briefing from both sides on the proper scope of remedial measures, the district court issued a Ruling and Order requiring Defendants-Appellants to implement a tailored set of changes deemed necessary to protect human health and safety on the Farm Line during the high heat of the summer months. *See* R. Doc. 109 (the "Remedial Measures Order"). These remedial measures—which were circumscribed by the motions panel's stay decision and were

---

officials that he would be required to work on the Farm Line and received notice from the Classifications Department stating that he was assigned to the Farm Line, specifically Line 25. He has informed prison officials that he will not go to work in the fields. On December 3, Plaintiffs-Appellees' counsel sought an explanation from Defendants-Appellants' counsel, who responded that as a result of what they described as a "clerical error," Mr. Williams indeed had been transferred to Camp D and, during the week of December 1, was assigned to the Farm Line. Defendants-Appellants' counsel reported that Mr. Williams has since been given "Unassigned – No Farm Line" status.

targeted to address heat-related risks present on the Farm Line during the summer—required LSP to provide to all men on the Farm Line one 15-minute break every hour when the heat index reached or exceeded 88 degrees; sufficient shade to cool themselves during said breaks; and clean cups to drink water from while working and taking breaks. *Id.* at 5–6.

In addition to granting the preliminary injunctive relief described above, in response to the PI Motion, on July 2, the district court issued an expedited discovery schedule and set a bench trial on the merits to begin on September 30, 2024. R. Doc. 72. The start of trial was later rescheduled for November 18, 2024, by request of the parties. R. Doc. 106. On October 18, the district court *sua sponte* issued an order delaying trial without setting a new start date. R. Doc. 131. On December 6, after holding a status conference with the parties, the district court issued an amended scheduling order, setting a seven day bench trial to begin on April 21, 2025. R. Doc. 158.

# SUMMARY OF THE ARGUMENT

The parties agree that the preliminary injunctive relief that is the subject of this appeal has expired under the PLRA, which provides that, unless certain requirements (that both sides agree are not present here) are met, any preliminary injunctive relief granted in prison conditions cases expires 90 days after its entry. *See* 18 U.S.C. § 3626(a)(2). Pursuant to this statutory language, the preliminary injunctive relief issued by the district court in the Order and further delineated by the Remedial Measures Order has expired, making the underlying appeal moot. Accordingly, this Court should do no more than dismiss the appeal as moot.

The Court should reject Defendants-Appellants' request to vacate the Order. Vacatur is an extraordinary equitable remedy, and Defendants-Appellants have failed to show that they are entitled to this remedy, for several reasons. *First*, Defendants-Appellants have failed even to attempt to show that it would be in the public interest to vacate the Order; rather, vacatur would be contrary to the public interest because the Order was issued to protect the constitutional rights—and the health and safety—of men at Angola, which it is in the public interest to preserve. *Second*, vacatur is not warranted because Plaintiffs-Appellees' actions are not the reason that the appeal has become moot. In fact, it is Defendants-Appellants' conduct that allowed the underlying injunctive relief to expire and the appeal to consequently become moot under the PLRA. *Third*, and finally, other equitable

considerations—including Defendants-Appellants' delay and borderline bad faith in implementing the remedial measures required by the district court—weigh strongly against finding that Defendants-Appellants are entitled to vacatur of the Order.

Although the parties agree that this Court should not reach the merits because the appeal is moot, Defendants-Appellants nevertheless recycle their PLRA and Eighth Amendment arguments from the stay motion proceedings, now made only in the alternative, to attack the Order on the merits. To the extent the Court addresses these issues, Defendants-Appellants' arguments should be rejected. With regard to the PLRA, Defendants-Appellants misstate the record when they assert that no named plaintiffs were assigned to—or faced risk of assignment to—the Farm Line; misconstrue the law regarding the propriety of class-wide injunctive relief prior to class certification; and mischaracterize the Order when they assert that certain of its provisions were definitionally "overbroad" under the PLRA. Defendants-Appellants' Eighth Amendment arguments fail for the reasons they were rejected by the motions panel, namely, because the Order properly identified ongoing Eighth Amendment violations based on the exposure of named plaintiffs and others to the *risk* of assignment to the Farm Line, and because the district court did not err in concluding, based on the totality of the record evidence, that Defendants-Appellants acted with deliberate indifference as to the risk of heat-related harms.

## STANDARD OF REVIEW

This Court "may not rule on the merits of a case without first determining [it has] jurisdiction" over a live dispute between the parties.  *Daves* v. *Dallas Cty.*, 64 F.4th 616, 623 (5th Cir. 2023).  "Mootness is a jurisdictional matter," and "a claim is moot when a case or controversy no longer exists between the parties."  *Brinsdon* v. *McAllen Ind. Sch. Dist.*, 863 F.3d 338, 345 (5th Cir. 2017).

To the extent this Court reviews the merits of a grant of a preliminary injunction, it applies the deferential standard of abuse of discretion.  *Robinson* v. *Ardoin*, 86 F.4th 574, 586 (5th Cir. 2023).  Factual findings that underlie a grant of a preliminary injunction are reviewed for clear error, and legal determinations are reviewed *de novo*.  *Id.* at 587.

## ARGUMENT

### I. The Court Should Dismiss the Appeal as Moot, but It Should Not Vacate the District Court's Order

The dispositive issues on this appeal are uncontested: the preliminary injunctive relief at issue has expired by operation of law, this appeal is moot, this Court thus lacks jurisdiction, and Defendants-Appellants' appeal must be dismissed. *See* App. Br. at 20. The parties dispute only whether the district court's order should be vacated. Because Defendants-Appellants have not met their burden of showing that they are entitled to the extraordinary equitable remedy of vacatur and because the equities, in fact, do not weigh in favor of vacatur, the Court should dismiss the appeal as moot and allow the district court's judgment to stand.

#### A. Because the Preliminary Injunction Has Expired by Operation of Law, the Appeal Is Moot and Should Be Dismissed on Jurisdictional Grounds

Under the PLRA, any "[p]reliminary injunctive relief" relating to prison conditions "shall automatically expire on the date that is 90 days after its entry" unless, before that date, the court makes certain findings required by statute and makes the order final. 18 U.S.C. § 3626(a)(2). Here, the district court issued the Order on July 2, 2024, and issued the Remedial Measures Order on August 15, 2024. Whether measured from July 2 or from August 15, more than 90 days have passed since the entry of preliminary injunctive relief, and the district court has not made

findings to extend the injunction's duration. Accordingly, the injunctive relief that is the subject of this appeal has expired by operation of law under the PLRA.[2]

Because the injunction has expired by its own terms, the parties agree that this appeal is moot. *See* App. Br. at 20. Accordingly, this Court's jurisdiction over the appeal has also expired, and the appeal should be dismissed on jurisdictional grounds without respect to the merits. *See Ministry of Oil of the Republic of Iraq*, 634 F. App'x at 956, 958 (where an appeal is moot, this Court "will not pass upon the merits" because mootness is a jurisdictional issue); *Brinsdon*, 863 F.3d at 345.

### B. Defendants-Appellants Have Not Shown Entitlement to the Extraordinary Remedy of Vacatur

"[V]acatur is an 'extraordinary' and equitable remedy." *Staley* v. *Harris Cty.*, 485 F.3d 305, 310 (5th Cir. 2007) (quoting *U.S. Bancorp Mortg. Co.* v. *Bonner Mall P'ship*, 513 U.S. 18, 26 (1994)). The primary considerations governing vacatur determinations are whether vacatur would serve the public interest and whether the moving party was at fault for causing the mootness. *See Staley*, 485 F.3d at 310; *see also Hall* v. *Louisiana*, 884 F.3d 546, 551 (5th Cir. 2018). Courts considering vacatur should also look to "general equitable principles," *Staley*, 485 F.3d at 310,

---

[2] Although the parties agree that the preliminary injunctive relief has expired under the PLRA, Plaintiffs-Appellees do *not* agree with all of Defendants-Appellants' factual and legal characterizations regarding the district court's injunctive relief orders and the 90-day expiration rule under the PLRA, *see* App. Br. at 20–26, and reserve all rights to contest Defendants-Appellants' positions to the extent they become relevant as this litigation proceeds, *see infra* Section II.

and should base their decisions on a consideration of the "totality of the equities" in order to "dispose of [a] case 'in the manner most consonant to justice,'" *id.* at 314 (quoting *Bancorp*, 513 U.S. at 24). The burden of showing entitlement to this extraordinary equitable relief is on the party seeking vacatur. *Id.*

Defendants-Appellants have not remotely satisfied that burden. Nor could they.

*First*, under Fifth Circuit and Supreme Court precedent "judgments 'should stand'" absent an affirmative conclusion that the public interest would be served by vacatur. *Hall*, 884 F.3d at 553 (quoting *Bancorp*, 513 U.S. at 26); *see also Franciscan All., Inc.* v. *Becerra*, 47 F.4th 368, 375 (5th Cir. 2022) (the party seeking vacatur "*must show* . . . that the public interest would be served by a vacatur") (emphasis added) (cleaned up). It is notable then, that Defendants-Appellants have not even attempted to argue, much less shown, that the public interest would be served by vacatur of the Order. *See* App. Br. at 26–29. And, in fact, the public interest would not be so served. The injunctive relief was put into place in order to protect the health, safety, and constitutional rights of the men assigned to the Farm Line during the 2024 heat season pending a decision on the merits of this action, which all parties expect will be rendered before the next heat season. The health and safety of those men and the preservation of constitutional rights is indisputably in the public interest, *see Jackson Women's Health Org.* v. *Currier*, 760 F.3d 448, 458

n.9 (5th Cir. 2014), and Defendants-Appellants have identified no countervailing state or public interest, nor is there one. That failure should be dispositive of the issue. *See Franciscan All., Inc.*, 47 F. 4th at 375–76.

*Second*, the mootness of this appeal is not the result of Plaintiffs-Appellees' unilateral actions. *Cf. Staley*, 485 F.3d at 310 (vacatur is appropriate when the "mootness results from the unilateral action of the party who prevailed in the lower court") (quoting *Bancorp*, 513 U.S. at 23)). In fact, the mootness here is instead the result of *Defendants-Appellants'* delay in pursuing their appeal. According to Defendants-Appellants, a party that obtains injunctive relief in a prison conditions case gains that relief for 90 days only and can never obtain an extension of that relief. *See* App. Br. at 27–29.[3] Under this interpretation of the PLRA, Defendants-Appellants are entirely to blame for the mootness of their appeal: Defendants-Appellants wasted no time filing a notice of appeal, moving for an emergency stay of the Order, and expediting their own briefing on that stay motion, *see* ECF Nos. 1, 12, 34, but when their stay motion was rejected in pertinent part by the motions panel—which held that Defendants-Appellants were unlikely to prevail in obtaining

---

[3] Plaintiffs-Appellees reject Defendants-Appellants' interpretation of the PLRA under which no extensions of injunctive relief are available. *See Smith* v. *Edwards*, 88 F.4th 1119, 1127 (5th Cir. 2023) ("[T]hough the injunction automatically expired under the PLRA, Plaintiffs could have sought an extension to extend its duration.") (citation omitted). Here, however, for reasons explained below, an extension request would have been futile.

a reversal of the district court's deliberate indifference finding, *see* Stay Op. at 9—Defendants-Appellants reversed course and delayed in perfecting their appeal, not only taking the full period of time allocated under Rule 31, but also requesting two separate extensions, *see* ECF Nos. 56, 58. The effect of these delays was to push the deadline for Defendants-Appellants to file their opening brief until after the injunction had expired.

All told, Defendants-Appellants waited 99 days after the Order issued to perfect their appeal. When they finally did perfect, their primary argument was that the Order was moot and therefore must be vacated; their merits arguments were made only "alternatively," App. Br. at 29, and largely were unchanged from those made in their July 2 stay motion, *compare id.* at 29–43 *with* ECF No. 12. Had Defendants-Appellants wished to have their appeal of the Order heard on the merits, they could have initiated briefing far earlier and left sufficient time for this Court to rule on substantive grounds. Instead, they did the opposite. They controlled the timeline of their appeal, and they chose to run out the 90-day clock rather than seek an adjudication of the Order on its merits.

Certainly, no unilateral action by Plaintiffs-Appellees caused this appeal to become moot. *See Hall*, 884 F.3d at 553–54 (affirming denial of vacatur when, among other factors, no party was at fault in mooting the appeal). As noted, Plaintiffs-Appellees had no opportunity to respond to the appeal until after the

injunction had already expired. And, by the time the injunction was expiring, the emergency that had justified the preliminary relief had passed, such that seeking an injunction would have made no sense. That is because the injunctive relief at issue here was granted in order to protect the health and safety of men on the Farm Line in the face of the intense risks associated with prolonged exposure to high heat on the Farm Line during the summer season. By the time the injunctive relief expired, it was autumn, and those specific heat risks had abated simply as a result of the changing seasons. Furthermore, it would have made little sense for Plaintiffs-Appellees to request an extension of the district court's grant of *preliminary* injunctive relief when, as of the time the injunctive relief expired, trial on the merits of Plaintiffs-Appellees' claim for *permanent* injunctive relief was set to begin within a matter of weeks.

*Third*, other equitable considerations strongly weigh against vacating the Order, which required Defendants-Appellants to take relatively modest steps to protect the health and well-being of men working on the Farm Line from heat-related risks. In fact, Defendants-Appellants' conduct following the Order is more deserving of sanction than equitable relief: following a hearing on the preliminary injunction, Defendants-Appellants assured the district court that they had begun taking appropriate remedial measures, such as providing pop-up tents to provide much-needed shade to men laboring on the Farm Line. But when Plaintiffs-

Appellees' representatives inspected the fields and reported back on what actually had been provided,[4] the district court concluded that Defendants-Appellants' purported remedial measures were "inadequate" and agreed that their account of those purported measures "border[ed] on bad faith." R. Doc. 109 at 2. In fact, Defendants-Appellants did not even begin to provide reasonable shade structures until October 3, after the height of the heat season had passed, and even then, failed to provide those structures to all of the farm lines that were operating. *See* R. Doc. 144 at 2.

All of these circumstances make this appeal readily distinguishable from *Smith* v. *Edwards*, 88 F.4th 1119 (5th Cir. 2023), and *Yates* v. *Collier*, 677 F. App'x 915 (5th Cir. 2017), the only cases Defendants-Appellants rely on for their vacatur argument. In both of those cases, the defendants actively sought to have their appeals heard on the merits, arguing *against* dismissal on mootness grounds. *See Smith*, 88 F.4th at 1124 ("Defendants offered several grounds for concluding that the appeal was not moot, regardless of the expiration of the preliminary injunction."); *Yates*, 677 F. App'x at 917 (defendants argued that appeal fell into mootness exception). The *Smith* and *Yates* courts rejected the defendants' arguments that the

---

[4] Undisputed evidence showed, for example, that Defendants-Appellees had erected a single small shade structure located at the far end of a long field that could at most provide shade to cover a handful of the approximately forty men working on the Farm Line. *See* R. Doc. 109 at 3.

appeals were not moot.  They each found, however, that it would be inequitable under the circumstances presented to force the respective defendants to acquiesce to judgments that those defendants sought to challenge on the merits but, through no fault of their own, did not have the opportunity to fully litigate.  Here, by contrast, Defendants-Appellants did everything in their power to evade review during the 90-day window and now insist that the Court should not reach the merits and should instead dismiss the appeal on mootness grounds.  Under such circumstances, none of the inequities underlying the decisions in *Smith* and *Yates* arise.

In sum, Defendants-Appellants have failed to show that vacatur would serve the public interest, have only themselves to blame for their appeal becoming moot, and have no argument that the equities otherwise require vacatur.  *See Su* v. *Cactus Canyon Quarries, Inc.*, 2024 WL 4003536, at *1 (5th Cir. 2024) (reaffirming post-*Yates* and *Smith*, that vacatur should be denied when the moving party fails to meet its burden of demonstrating an equitable entitlement to the extraordinary remedy of vacatur based on the facts of the case).  Accordingly, the Court should dismiss the appeal as moot but should not vacate the Order.

## II.     The District Court's Injunction Was Sound on the Merits

For the reasons explained above, the appeal is moot, and the Court does not have jurisdiction to consider the merits of the Order.  *See Motient Corp.* v. *Dondero*, 529 F.3d 532, 537 (5th Cir. 2008) ("[F]ederal courts cannot give opinions on 'moot

questions or abstract propositions,'" so "an appeal must be dismissed" when the issues presented are moot (quoting *Calderon* v. *Moore*, 518 U.S. 149, 150 (1996))). Nevertheless, if the Court reaches the merits of the district court's preliminary injunction order, it should affirm.

### A. The Injunction Comports with the PLRA

Defendants-Appellants argue that the injunction violates the PLRA for three reasons. Each is baseless.

### 1. Defendants-Appellants' Assertion That There Are No Plaintiffs-Appellees on the Farm Line Is False

Defendants-Appellants claim that the preliminary injunctive relief violated the PLRA and was improper when granted because no named plaintiffs are currently working on the Farm Line. *See* App. Br. at 30–31. This argument is unpreserved, is factually incorrect, and misapprehends the law.

As an initial matter, Defendants-Appellants' lead merits argument on appeal was never raised in the proceedings below, and, therefore, is unpreserved. *See Rollins* v. *Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument by failing to raise it in the first instance in the district court—thus raising it for the first time on appeal."). Indeed, "if a litigant desires to preserve an argument for appeal, the litigant must press and not merely intimate the argument during the proceedings before the district court." *F.D.I.C.* v. *Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994). Thus, Defendants-Appellants' assertion that the PLRA prohibits relief

because no plaintiffs are on the Farm Line should not be considered. *See id.* ("If an argument is not raised to such a degree that the district court has an opportunity to rule on it, [this Court] will not address it on appeal.").

Additionally, Defendants-Appellants' argument is demonstrably false. It is undisputed that this summer, multiple named plaintiffs were assigned to the Farm Line and therefore at risk of being sent to work in the fields. In fact, in their motion to stay, Defendants-Appellants conceded that Myron Smith was assigned to the Farm Line this summer. *See* ECF No. 12 at 11. In addition, Defendants-Appellants were forced to concede that Damaris Jackson was reassigned to the Farm Line on or around July 2, 2024, the date the district court issued the Order and Defendants-Appellants filed their notice of appeal. *See* App. Br. at 15 n.1; ECF No. 39. Mr. Jackson was called for work on the Farm Line again on July 8 and July 9, 2024; each time he refused to work. ECF No. 38 at 4. Furthermore, to this day, Defendants-Appellants have never disputed that members of VOTE, a named plaintiff in this action, were and continue to be assigned to the Farm Line. *See* ECF No. 31 at 21 n.4. And, just this month, named plaintiff Darrius Williams was reassigned to Line 25 after being transferred to Camp D.

Furthermore, Defendants-Appellants' argument is a red herring. While Defendants-Appellants attempt to misdirect the Court's attention by focusing on whether any named plaintiffs are working on the Farm Line today, the relevant

inquiry for the district court (and under the Eighth Amendment, as explained further below) was whether any named plaintiffs were at risk of being assigned to the Farm Line when the Order was issued. The evidence on that front is clear: As both Damaris Jackson's experience in July and Darius Williams' experience in December so clearly demonstrate, prison officials can assign anyone incarcerated at Angola to the Farm Line at any time. The named plaintiffs, VOTE members, and indeed anyone incarcerated at Angola, have faced and continue to face the ever-present risk of being sent out on the Farm Line.

Defendants-Appellants try to circumvent this fact by asserting that, because, purportedly, no named plaintiffs are currently on the Line, the Order did not properly identify an ongoing" violation of the Federal right of a particular plaintiff," as required under the PLRA. App. Br. at 30 (citing 18 U.S.C. § 3626(a)(1)(A)). Defendants-Appellants cite no authority to support that argument. That is because none exists. Section 3626(a)(1)(A) governs the *scope* of an injunction under the PLRA. It has no bearing on the substantive standard used to evaluate whether a constitutional violation has occurred. *See Smith* v. *Ark. Dep't of Corr.*, 103 F.3d 637, 647 (8th Cir. 1996) (the PLRA "merely codifies existing law and does not change the standards for determining whether to grant an injunction"); *Williams* v. *Edwards*, 87 F.3d 126, 133 (5th Cir. 1996) (a district court must first undertake an examination and "find a violation of a [f]ederal right"; only after such a finding is

made must the remedy conform with the standards set forth in Section 3626(a)(1)(A) of the PLRA).

### 2. The District Court Did Not Abuse Its Discretion by Ordering Class-Wide Injunctive Relief

Defendants-Appellants next contend that the district court erred in granting relief that was not limited to the named plaintiffs because, under *Ball* v. *LeBlanc*, 792 F.3d 584 (5th Cir. 2015), the PLRA should be read to bar injunctive relief on a class-wide basis before a class has been certified, *see* App. Br. at 32. This argument, recycled from Defendants-Appellants' stay motion, was expressly and correctly rejected by the motions panel. Stay Op. at 6–7. Defendants-Appellants trot out the same arguments here and ask this Court to reach a different result. But their arguments fail for all the same reasons.

Defendants-Appellants' continued reliance on *Ball* is misguided. As the motions panel noted, *Ball* was "not a class action" and therefore "said nothing about whether class certification must precede preliminary class-wide relief under the PLRA." Stay Op. at 6 (quoting *Ball*, 792 F.3d at 599). *Ball* thus stands only for the proposition that the PLRA bars facility-wide injunctive relief when an individual plaintiff or plaintiffs, not seeking to represent a class, seek injunctive relief for themselves individually. *See also Barbee* v. *Collier*, 2022 WL 16860944, at *3 (5th Cir. Nov. 11, 2022) (citing *Ball*) (finding that facility-wide relief was overbroad

under the PLRA where the plaintiff "did not bring a class action; he sought only individual injunctive relief").

In fact, district courts in the Fifth Circuit, as well as numerous courts in the Second, Sixth, and Seventh Circuits, have held repeatedly that a court "may, in its discretion, award appropriate class-wide injunctive relief prior to a formal ruling on the class certification issue." *Alex A.* v. *Edwards*, 2022 WL 3701169, at *3 (M.D. La. Aug. 26, 2022); *see also* Stay Op. at 6 (same) (quoting *Thomas* v. *Johnston*, 557 F. Supp. 879, 916 n.29 (W.D. Tex. 1983)); *Rodriguez* v. *Providence Cmty. Corrs., Inc.*, 155 F. Supp. 3d 758, 767 (M.D. Tenn. 2015) (same); *McNeil* v. *Cmty. Prob. Servs., LLC*, 2019 WL 633012, at *16 (M.D. Tenn. Feb. 14, 2019) (quoting *Rodriguez*); *Yang* v. *Kellner*, 458 F. Supp. 3d 199, 218 n.5 (S.D.N.Y. 2020), *aff'd*, 960 F.3d 119 (2d Cir. 2020) ("The Court need not formally certify a class in order to issue the requested preliminary relief."); *Lee* v. *Orr*, 2013 WL 6490577, at *2 (N.D. Ill. Dec. 10, 2013) ("District courts have the power to order injunctive relief covering potential class members prior to class certification . . . The lack of formal class certification does not create an obstacle to classwide preliminary injunctive relief when activities of the defendant are directed generally against a class of persons."); *O.B.* v. *Norwood*, 170 F. Supp. 3d 1186, 1200 (N.D. Ill. 2016) (quoting *Lee*).

Indeed, as the motions panel stressed, "class-wide relief may be appropriate. . . if such is necessary to give the prevailing party the relief to which he or she is entitled." Stay Op. at 6 (quoting *Hernandez* v. *Reno*, 91 F.3d 776, 781 (5th Cir. 1996)). Here, relief on a class-wide basis, including providing adequate breaks and access to shade, sunscreen, and other protective equipment, was necessary to mitigate the life-threatening risks of heat-related illness faced by the named plaintiffs and other men laboring on the Farm Line.

Defendants-Appellants fail to cite any other authority calling the district court's ruling into question—just as they failed to do before the motions panel. *See* Stay Op. at 6. Their attempt to distinguish *Alex A.* on the grounds that it was not decided under the PLRA, *see* App. Br. at 32, is unpersuasive, because *Alex A.* is a prison conditions case and therefore *was* governed by the PLRA. It strains credulity to assert that, simply because the *Alex A.* court did not expressly invoke the PLRA, that court's rationale is somehow inapplicable here. It is also of no moment that the courts in *Gooch* v. *Life Investors Insurance Co. of America*, 672 F.3d 402 (6th Cir. 2012), and *Yang* did not involve the PLRA and did not issue an injunction. *See* App. Br. at 33. As with *Alex A.*, both cases state the general equitable rule in the Sixth and Second Circuits that it is within a district court's discretion to grant class-wide preliminary relief prior to class certification.

Rather than disputing the breadth of legal authority supporting the district court's ruling, Defendants-Appellants urge this Court to reach a different result by invoking the specter of a potential circuit split. App. Br. at 32–33. That argument is a straw man. It is apparent that a split already exists between courts in the Fifth, Second, Sixth, and Seventh Circuits, on the one hand, and courts in the Ninth Circuit, on the other hand, and affirming the district court's decision would in no way further this split. Defendants-Appellants provide no legal basis for this Court to accept the minority view of the Ninth Circuit. In any event, even if there were a meaningful circuit split, this Court should not resolve a contested substantive issue here, on an appeal that the parties agree is moot by operation of law such that this Court lacks jurisdiction to adjudicate it on the merits. *See Smith*, 88 F.4th at 1124–25; *Hornbeck Offshore Servs., LLC* v. *Salazar*, 396 F. App'x 147, 148 (5th Cir. 2010) (when an appeal of a preliminary injunction has been mooted, "[a]ny opinion expressed by this court on the merits . . . would address an injunction that is legally and practically dead," making any such opinion "'merely advisory'" (quoting *In re Blast Energy Servs., Inc.*, 593 F.3d 418, 423 (5th Cir. 2010))).

Lastly, Defendants-Appellants' argument fails because the district court's decision to grant an injunction is reviewed under an abuse of discretion standard. *Schlotzsky's Ltd.* v. *Sterling Purchasing & Nat. Distrib. Co.*, 520 F.3d 393, 402 (5th Cir. 2008). A district court abuses its discretion based on its legal reasoning only if

it "relies on erroneous conclusions of law." *Id.* But as explained above, the district court's legal reasoning was supported by ample authority from within the Fifth Circuit and from other district courts. Defendants-Appellants therefore have no basis to claim that the district court's exercise of its discretion was based on an erroneous interpretation of the law.

### 3. The Relief Ordered Was Not Overbroad

Defendants-Appellants finally argue that Parts 3, 4, and 5 of the Order are overbroad under the PLRA because they would necessarily apply across the entire Louisiana DOC. App. Br. at 34. This argument holds no water.

Parts 3, 4, and 5 required Defendants-Appellants to submit proposals to the district court for developing a "revised and expanded Heat Pathology Medications list"; a "procedure to ensure that all incarcerated persons suffering from health conditions that significantly inhibit thermoregulation are assessed by medical personnel and are granted heat precaution duty status; and "an additional heat-related policy to protect those laboring outdoors when heat index values reach or exceed 113 degrees Fahrenheit, the temperature at which the National Weather Service issues excessive heat warnings," respectively. ROA.3126. The Order makes clear that the scope of the relief intended by the district court was "to alter *Farm Line working conditions* to protect human health and safety." ROA.3050 (emphasis added). Nothing in the Order suggested that Defendants-Appellants were required

to make policy changes that applied to all prisons throughout Louisiana; the focus of the district court was appropriately and narrowly tailored to the operation of the Farm Line during the highest heat months.  ROA.3124 (noting that the relief ordered would not "significantly alter operations *on the Farm Line*" (emphasis added)).  Nor is there anything in the Order that precluded Defendants-Appellants from proposing policies that applied only to LSP.  Quite simply, Defendants-Appellants' PLRA challenge to Parts 3 through 5 rests on the unfounded assertion that these elements of the Order extend beyond LSP, but nothing in the Order supports this position.

## B. The District Court Correctly Applied the Law Under the Eighth Amendment

The district court's Eighth Amendment analysis was well reasoned and supported by the factual record and applicable case law.  Defendants-Appellants fail to prove that any of the district court's factual findings regarding deliberate indifference were clearly erroneous and thus cannot demonstrate that the district court abused its discretion by granting the injunctive relief.

### 1. The District Court Properly Identified Ongoing Eighth Amendment Violations

Just as they did before the motions panel, Defendants-Appellants double down on their assertion that no named plaintiff currently works on the Farm Line, to argue that the district court failed to identify any ongoing Eighth Amendment violation.

This argument, never raised below, is unpreserved and rests on a flawed understanding of the law.

In the proceedings below, Defendants-Appellants conceded that there were named plaintiffs on the Farm Line and thus never made the argument they now urge this Court to accept. Accordingly, the argument is unpreserved and should not be considered. *See supra* at 24–25.

In addition to being unpreserved, Defendants-Appellants' arguments are legally misguided. An Eighth Amendment violation occurs when an incarcerated person is subjected to "a substantial risk of serious harm." *Farmer* v. *Brennan*, 511 U.S. 825, 834 (1994). It is axiomatic that, to make out an Eighth Amendment claim, Plaintiffs-Appellees are not required to show *actual* harm in the present, but rather that a showing of a substantial risk of harm in the future will suffice. *Helling* v. *McKinney*, 509 U.S. 25, 33 (1993); *see also Farmer*, 511 U.S. at 843 (Eighth Amendment does not require that actual harm "befall an [incarcerated person]"); *Ball*, 792 F.3d at 593 ("To prove unconstitutional conditions, inmates need not show that death or serious injury has already occurred . . . They need only show that there is a substantial *risk* of serious harm" (emphasis added) (internal quotation marks omitted)); *Horton* v. *Cockrell*, 70 F.3d 397, 401 (5th Cir. 1995) ("[T]he Eighth Amendment is intended to protect against both present and future dangers to inmates.").

As explained above, Defendants-Appellants do not contest that at the time the PI Motion was filed, and at the time the district court issued the Order, multiple named plaintiffs were assigned to and therefore at risk of being sent to the Farm Line in life-threatening heat conditions at any time. Nor do they dispute that nearly everyone at LSP, including VOTE members, can be reassigned to and are therefore at risk of being sent to work on the Farm Line at any time. And again, the experiences of both Damaris Jackson and Darrius Williams prove the point. Accordingly, the substantial risk of harm that incarcerated men at Angola face of assignment to the Farm Line is ongoing, and the Order was consistent with binding Eighth Amendment case law, including *Farmer* v. *Brennan*, for the simple reason that Plaintiffs-Appellees "demonstrate[d] the continuance" of the risk of harm, *see Farmer*, 511 U.S. at 846, while Defendants-Appellants have made no showing that they "would not revert to their obduracy upon cessation of the litigation," Stay Op. at 6 (quoting *Farmer*, 511 U.S. at 846 n.9).

Defendants-Appellants argue, without any support, that the rule announced in *Farmer* and cited approvingly by the motions panel should not apply to preliminary relief. App. Br. at 36. There is no logic to cabining *Farmer* in this way. Such an interpretation would render preliminary relief ineffectual, allowing unconstitutional prison conditions to escape judicial scrutiny so long as prison officials remove named plaintiffs from exposure to the constitutionally defective conditions and

represent that they will not re-expose them to the conditions until after the preliminary injunctive relief expires.  This result cannot stand—especially in light of the rule in this Circuit that, as the motions panel explained, "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."  Stay Op. at 6 (quoting *Gates* v. *Cook*, 376 F.3d 323, 337 (5th Cir. 2004)).

### 2. The District Court Did Not Err in Finding That Defendants-Appellants Acted with Deliberate Indifference

A district court's determination that prison officials acted with deliberate indifference is a "factual finding[] reviewed for clear error."  *Ball*, 792 F.3d at 592 (quoting *Gates*, 376 F.3d at 333).  A finding is clearly erroneous only "if it is without substantial evidence to support it, [if] the court misinterpreted the effect of the evidence, or [if the appellate] court is convinced that the findings are against the preponderance of credible testimony."  *Ball*, 792 F.3d at 592 (quoting *Petrohawk Props., L.P.* v. *Chesapeake La., L.P.*, 689 F.3d 380, 388 (5th Cir. 2012)).

Here, as noted by the motions panel, the district court's evidentiary analysis and ultimate deliberate indifference conclusion were well supported by the "totality of the record evidence." Stay Op. at 8.  Specifically, the district court, after carefully reviewing numerous categories of evidence, concluded that there was a substantial likelihood that Defendants-Appellants acted with deliberate indifference to the heat-related risks on the Farm Line.  *See* ROA.3115–20.  Further, as the motions panel

concluded, Stay Op. at 8, and as Defendants-Appellants concede, App. Br. at 38, no single type of evidence constituted the sole basis for the district court's deliberate indifference finding.

Defendants-Appellants nevertheless claim that the district court was "simply wrong" in its determination of deliberate indifference, *id.*, and they focus their attacks on three discrete categories of evidence: Defendants-Appellants' heat-pathology policies; Defendants-Appellants' summary denials of Plaintiffs-Appellees' heat-related grievances; and heat-related guidelines issued by various national, state, and commercial bodies, *id.* at 39–41. Defendants-Appellants' bald assertions as to these categories of evidence do not pass muster and certainly do not show clear error.

*First*, it was entirely appropriate for the district court to base its findings in part on Defendants-Appellants' policies. In fact, this Court has held that evidence of a prison's inadequate or unfollowed policies can support a finding of deliberate indifference as to the risks reflected in those policies. *See Hinojosa* v. *Livingston*, 807 F.3d 657, 667 (5th Cir. 2015) (heat-related policies suggested Defendants-Appellants' awareness of the risk). Furthermore, contrary to Defendants-Appellants' assertions, App. Br. at 38–39, the district court did not merely disagree with the substance of LSP's heat-related policies; rather, it concluded that LSP's heat-related policies showed deliberate indifference because those policies were

internally inconsistent, irrational, and not updated over the course of *years* in the face of known risks of heat-related harm, *see* ROA.3117–19 (concluding that LSP's policies "help establish Plaintiffs[-Appellees]' case for deliberate indifference" because, among other issues, the policies "conflict with [LSP's] own educational materials," irrationally provide less protection for men laboring outdoors in the baking heat as compared to men inside, and had not been updated since 2019 despite medical records showing serious heat-related injuries occurring since then). The district court further observed that the evidence appeared to show that Defendants-Appellants had failed to comply with the requirements set forth by their own heat-related policies—for example, the court noted that LSP's heat pathology policy requires the facility to document its implementation of the policies outlined therein, even as LSP's Field Operations Colonel averred to the district court that such documentation was "not required" and that LSP "does not necessarily maintain" any such documentation. ROA.3086.

This all sets the district court's deliberate indifference analysis apart from that at issue in *Valentine* v. *Collier*, 956 F.3d 797 (5th Cir. 2020), in which the court ordered an injunction that overlapped with the existing policies on the theory that the injunction would promote compliance with those policies. Further, unlike in *Valentine*, here, Defendants-Appellants' inadequate policies were not treated as "dispositive" of mental state. Instead, as the motions panel stressed, Defendants-

Appellants' policies were one factor of many that contributed to the district court's deliberate indifference finding based on the totality of the record evidence. Stay Op. at 8.

*Second*, the district court did not rely on Defendants-Appellants' denials of the named plaintiffs' grievances to suggest disagreement with the underlying decisions, but instead as one basis showing that LSP was made aware of the risks posed by working on the Farm Line in extremely hot conditions, and yet declined to take actions to mitigate these risks. This Court has previously accepted such evidence for that very purpose. *See Blackmon* v. *Garza*, 484 F. App'x 866, 873 (5th Cir. 2012); *Gates*, 376 F.3d at 340.

*Third*, the district court considered industry standards only to evaluate whether the totality of evidence was sufficient to satisfy the Eighth Amendment's *objective* prong. *See* ROA.3113. Indeed, the Order expressly stated that the court was considering industry guidelines only to the extent they "support[ed]" the other evidence regarding the objective risks of heat-related illness on the Farm Line, including evidence from Plaintiffs-Appellees' expert. *Id.*; *see also Sampson* v. *King*, 693 F.2d 566, 569 (5th Cir. 1982) (noting that "[s]tandards suggested by experts" can be "advisory" in the Eighth Amendment inquiry). Defendants-Appellants' assertions that the district court improperly relied on industry standards in reaching

its deliberate indifference conclusion under the *subjective* prong of the Eighth Amendment, App. Br. at 40, completely mischaracterize the Order's reasoning.

Thus, none of Defendants-Appellants' challenges to the evidence considered by the district court demonstrate that the Order clearly erred in reaching its conclusion that Defendants-Appellants were likely deliberately indifferent to the heat-related risks on the Farm Line.  To the contrary, Defendants-Appellants' arguments only highlight that the district court carefully considered all the evidence before it and drew conclusions that were supported by the totality of that substantial evidence.

*Lastly*, Defendants-Appellants argue that Parts 3 through 5 of the Order were substantively overbroad.  None of these arguments are persuasive.

*Part 5*.  Defendants-Appellants argue that the Order was overbroad because there was no evidence that the State acted with deliberate indifference regarding outdoor labor when the heat index values hit 113 degrees Fahrenheit, the heat index at which the National Weather Service, which Defendants-Appellants purport to consult, issues excessive heat warnings.  But the district court found that Plaintiffs-Appellees had shown a substantial likelihood of proving their Eighth Amendment claim, which asserted that the State was deliberately indifferent to the risks posed by exposure to high heat, defined as *any* heat index value above 88 degrees Fahrenheit. ROA.3116.  There is simply no legal basis for Defendants-Appellants to argue that

the law requires the district court to make a specific finding that the State was deliberately indifferent to the impact of even higher heat index values that meet or exceed the recognized significant threshold of 113 degrees Fahrenheit.

*Part 4*. Defendants-Appellants argue that the district court cited "scant evidence" to support its conclusion that the State was deliberately indifferent to the claims of heat-sensitive individuals specifically. App. Br. at 36–37. Not so. In fact, the district court cited evidence that Defendants-Appellants are aware of and disregard that the heat-related risks are more dangerous for individuals who take medications or who have chronic conditions inhibiting their ability to thermoregulate. ROA.3117–18.

*Part 3*. Defendants-Appellants argue that the Order is improper to the extent it enjoins the State to follow existing procedures. But that is not what the Order requires. Part 3 requires Defendants-Appellants to create "a revised and expanded Heat Pathology Medications list" so that LSP can adequately evaluate and identify people who have heat-sensitive health conditions for heat-precaution duty status. ROA.3126. Unlike in *Valentine*, Part 3 is not meant to "promote compliance" with existing policies. *Valentine*, 956 F.3d at 801. As explained above, and unlike in *Valentine*, the district court here made express findings that Defendants-Appellants policies were irrational. *Valentine* stands only for the proposition that courts cannot enjoin prison officials to comply with facially adequate policies. It does not apply

when the district court has found that the policies themselves are irrational and inadequate.

In sum, should the Court reach the merits of this appeal, which it need not do, it should affirm the district court's Order.

## CONCLUSION

For the reasons set forth above, the Court should dismiss this appeal as moot, but it should not vacate the district court's order. Should the Court reach the merits of the decision, it should affirm the district court's grant of preliminary injunctive relief.

DECEMBER 9, 2024

Respectfully submitted,

/s/     Jeremy A. Benjamin

THE PROMISE OF JUSTICE INITIATIVE
LYDIA WRIGHT
SAMANTHA BOSALAVAGE
1024 ELYSIAN FIELDS AVENUE
NEW ORLEANS, LA 70117
TEL: (504) 529-5955
lwright@defendla.org
sbosalavage@defendla.org

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
JOSHUA HILL JR.
JEREMY A. BENJAMIN
ARIELLE B. MCTOOTLE
LEAH R. WEISER
1285 AVENUE OF THE AMERICAS
NEW YORK, NY 10019-6064
TEL.: (212) 373-3000
FAX: (212) 757-3990

*jhill@paulweiss.com*
*jbenjamin@paulweiss.com*
*amctootle@paulweiss.com*
*lweiser@paulweiss.com*

**RIGHTS BEHIND BARS**
AMARIS MONTES
416 FLORIDA AVENUE NW,
STE. 26152
WASHINGTON, D.C. 20001
TEL: (202) 455-4399
*amaris@rightsbehindbars.org*

## CERTIFICATE OF SERVICE

I, Jeremy A. Benjamin, a member of the Bar of this Court and counsel for Appellees certify that, on December 9, 2024, a copy of the foregoing brief was filed with the Clerk through the Court's electronic filing system. I further certify that all parties required to be served have been served.

/S/ *Jeremy A. Benjamin*
JEREMY A. BENJAMIN

**CERTIFICATE OF COMPLIANCE**
**WITH TYPEFACE AND WORD-COUNT LIMITATIONS**

I, Jeremy A. Benjamin, a member of the Bar of this Court and counsel for Plaintiffs-Appellees, hereby certify, pursuant to Federal Rules of Appellate Procedure 27(d)(2)(A), 32(a)(5), and 32(a)(6),  and Fifth Circuit Rule 32.3, that the foregoing brief is proportionately spaced, has a typeface of 14 points or more, and contains 8,794 words.

/S/ *Jeremy A. Benjamin*
JEREMY A. BENJAMIN

DECEMBER 9, 2024